## JOHN F. OWENS v. DANIEL SHOVLIN.·

**ERROR TO THE COURT OF COMMON PLEAS OF LUZERNE COUNTY.**

Argued April 15, 1887—Decided May 16, 1887.

1. The right of a landlord to follow and distrain his tenant's goods and chattels removed from the demised premises, exists only by force of § 5 of the act of March 21, 1772, 1 Sm. L. 371; and, in the absence of a special provision in the lease otherwise, the right can be exercised only when the goods have been removed fraudulently or clandestinely.

2. Notwithstanding there is a provision in a lease that in case of the removal of the tenant from the premises during the term, the whole rent unpaid should then become due and collectible by distress or otherwise, goods and chattels of the tenant removed from the premises cannot be distrained unless the removal was fraudulent and clandestine, which is a question of fact to be submitted to the jury.

Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.; PAXSON, J., absent.

No. 386 January Term 1887, Sup. Ct.; Court below, No. 262 February Term 1885, C. P.

Charge of Court below

The trial in the court below was on an appeal by Daniel Shovlin, the defendant in an action of *trespass* brought by John F. Owens before a justice of the peace.

On March 19, 1884, Daniel Shovlin demised to John F. Owens a lot and dwelling in Wilkes-Barre for one year from April 1, 1884, at a rental of $185, payable $15 per month in advance    The lease contained this provision :

It is further agreed, that in case of removal, or attempt at removal, of said John F. Owens from said premises during the continuance of this lease, then and in that case the whole rent unpaid to become at once due and payable, and collectible by distress or otherwise, at option of the lessor.

Owens, the lessee, entered upon the premises and remained in possession until November 27, 1884, when, complaining of arbitrary restrictions with reference to the use of the premises he moved away taking his goods and chattels with him.    At that time the rent had been paid in full up to December 1.

Shovlin, the lessor, then executed a landlord's warrant and caused a distress and sale of all the furniture and household effects of Owens in his new residence, whereupon the latter brought said action of trespass before a justice who gave judgment in his favor for $188.50; whereupon the said appeal was entered.

On the trial, the foregoing facts and the value of the property sold were shown, and at the close of the testimony the plaintiff requested the court to charge the jury :

That the clause in the lease " that in case of removal on the part of the lessee from the premises during the continuance of the lease then and in that case, the whole rent unpaid to become at once due and payable and collectible by distress or otherwise," did not warrant a distress and sale on a landlord's warrant of the lessee's goods already moved to premises not covered by lease, there being no rent actually due and no allegations or proofs that said goods were clandestinely or fraudulently removed. [3]

The court, STANLEY WOODWARD, J., then charged the jury jury as follows :

This is an action of trespass brought by John T. Owens against Daniel Shovlin to recover damages for an alleged illegal distress upon personal property for rent.   There is no dispute

Charge of the Court below.

in the case as to the fact that Shovlin, the defendant, leased the property to Owens, the plaintiff. The rent for the premises was to be $15.00 per month, payable monthly in advance. [At the time the tenant, Owens, quit the premises, which was in November, 1884, he had paid all the rent due. That is, he had paid for all the months preceding the time that he left, including the month of November, during which he left. It is not denied that the distress in question took place upon other premises than those covered by the lease; hence the plaintiff alleges their seizure on the distress and their sale was a trespass and he seeks to recover the amount in damages caused thereby. In the view we take of the law of the case, we feel it our duty to say that the plaintiff is not entitled to recover.) [1] . . . . .

The act of Assembly of the 21st of March, 1772, provides that in case any lessee for life or lives, term of years, at will or otherwise, of any messuages, lands or tenements, upon the demise whereof any rents are or shall be reserved or made payable, shall from and after the publication of this act, fraudulently or clandestinely convey or carry off from such demised premises his goods and chattels with intent to prevent the landlord or lessor from distraining the same for arrears of such rent so reserved as aforesaid, it shall and may be lawful to and for such lessor or landlord, or any other person or persons by him for that purpose lawfully empowered, within the space of thirty days next ensuing such conveying away or carrying off such goods and chattels as aforesaid, to take and seize such goods and chattels wherever the same may be found, as a distress for the said arrears of such rent and the same to sell, etc.

[We say to you, in our judgment as matter of law, if this were a simple lease between two parties, the force and effect of which, so far as the remedies by distress or otherwise were concerned, depended not on the language of the instrument but upon the act of Assembly in regard to landlord and tenant, then there could be no distress except upon the premises demised, unless it was shown that the removal was fraudulent or clandestine. But we say to you further, that the law of this case is to be found in the contract which the parties made and which is shown by the lease. This lease provides, among other things, as follows: " It is further agreed that in case of removal or attempt at removal of said John F. Owens from

said premises during the continuance of this lease, then and in that case, the whole rent unpaid to become at once due and payable and collectible by distress or otherwise, at the option of the lessor." It is admitted that the tenant did remove these goods during the time of this lease to other premises without the consent of the lessor. This, under the contract, caused the whole rent to become at once due and collectible by distress or otherwise. It follows under this evidence that the action of the landlord was agreeable to the contract, and therefore was not a trespass for which he is liable in damages.] [2] In the cases cited to us there was no such contract; they turned as we understand them on the significance of the terms clandestine or fraudulent, and not on the provisions of a lease like this.

Holding these views, we say as matter of law, that in our judgment there was no trespass in this case, and, therefore, there can be no recovery by the plaintiff, and your verdict should be for the defendant.

The jury rendered a verdict for the defendant, whereupon the plaintiff took this writ and assigned for error :

1. That part of the charge embraced in [ ] [1]
2. That part of the charge embraced in [ ] [2]
3. The refusal of the court to charge as in point. [3]


*Mr. John McGahren*, for the plaintiff in error :

A distress can be executed only upon the demised premises, except in the case provided for by § 5 of the act of March 21, 1772, where the removal has been fraudulent and clandestine : Grant's App., 44 Penn. St. 479; Goodwin v. Sharkey, 80 Idem 149.

No one will gainsay the right of the parties to stipulate the time and manner when the rent should become due; but any covenant which provides a remedy for its collection not authorized by law is null and void and cannot be enforced.

The legal import of the word "distress" does not give a right to distrain the tenant's goods off the premises, except when fraudulently or clandestinely removed as exceptionally authorized by statute : Jack. & G. Land. & T., § 1112; 3 Bl. Com. 12; 1 Pars. Con., 5th ed., 517; Grace v. Shively, 12 S. & R. 217.

*Mr. Michael Cannon*, for defendant in error:

The landlord did nothing in the execution of the warrant of distress except what was authorized by the express contract of the parties contained in the lease, and authorized by law: Goodwin v. Sharkey, 80 Penn. St. 149; Schenley's App., 70 Idem 101; Frank v. Maguire, 42 Idem 77; Grant's App., 44 Idem 477.

OPINION, MR. JUSTICE GREEN:

There is no doubt that when Owens removed from the premises demised to him by Shovlin before the expiration of the term, the rent for the remainder of the term became immediately due and payable. This was so by force of the express provision of the lease. Not only did the remaining rent for the term become due and payable, but it was also "collectible by distress or otherwise," because the lease so declared. That such a contract is within the power of the parties to make was fully held in Grant and McLane's Appeal, 44 Penn. St. 477, and Goodwin v. Sharkey, 80 Penn. St. 149.

But the question arises what kind of a distress was authorized by this language of the lease. The learned court below thought, and so held, that it authorized any kind of distress which the law permitted. The court conceded, however, that if it were the case of an ordinary lease the remedy by distress could only be exercised upon the premises demised, unless it was shown that the removal of the goods was fraudulent or clandestine. He held, nevertheless, that because of the provision that in case of the tenant's removal from the premises the rent should become immediately due and payable, and should be collectible by distress or otherwise, a right of distress away from the demised premises arose without showing that the removal of the goods of the tenant was fraudulent or clandestine. We are unable to agree to this conclusion. The right to follow the goods off of the premises exists only by force of the statute of March 21, 1772, 1 Sm. L. 371, and is given when the tenant "shall fraudulently or clandestinely convey or carry off from such demised premises his goods and chattels with intent to prevent the landlord or lessor from distraining the same for arrears of such rent so reserved as aforesaid." In order then that this particular privilege of

following the goods off the premises may be exercised, it must appear that the prescribed conditions exist, to wit: a fraudulent or clandestine removal of the tenant's goods. How does that appear in this case? As a matter of fact it does not appear at all, because the court below took away from the jury the power of deciding the question, by a binding instruction to find for the landlord upon the mere words of the lease. If now it appeared in the lease that any removal of the goods should be treated as a fraudulent or clandestine removal the requirements of the statute would be complied with. But there is no such provision in the lease and hence the fundamental condition upon which alone the right in question may be exercised is absent. The right to proceed presently by distress is conferred by the lease, but this right can only be enforced by distraint on the premises. An exception in this respect exists if the goods have been removed fraudulently or clandestinely from the demised premises; but unless one or other of these facts has transpired, the exceptional right does not arise.

In the case of Grant and McLane's Appeal, *supra*, the provisions of the lease were substantially identical with those of the present lease both as to the maturing of the rent and the right of distress. The tenant removed from the premises and also removed his goods before the expiration of the term. The goods were removed in the daytime and the auditor distributing the proceeds held they were not removed clandestinely but were removed fraudulently. But this court held that fraud did not necessarily follow from the mere removal, and that the right of distress did not exist by mere force of the lease which gave the right of distress generally, but must be founded upon an actual removal either fraudulently or clandestinely. That case rules the present and requires a reversal of the judgment in order that the cause may go back for trial upon the question whether Owens removed his goods fraudulently or clandestinely within the meaning of the act of 1772.

Judgment reversed and new *venire* awarded.


MR. CHIEF JUSTICE MERCUR and MR. JUSTICE GORDON dissent.