# Pickering, Appellant, *v.* Breen.

*Landlord and tenant—Distress—Removal of goods in nighttime.*

A tenant after taking possession of a residence bought some furniture for use therein. Shortly afterwards he removed from the house, locked it, and turned the key over to a stranger. Upon his removal he asked the dealer, who sold him the furniture, to take it back. When the tenant left rent was due, and a constable at the instance of the landlord made several ineffectual attempts to levy on the goods between sunrise and sunset. The furniture dealer secured the key to the house, and while he was attempting after sunset to remove the furniture, the constable levied upon it before it reached the pavement. *Held,* that the distress was a lawful one.

Argued April 24, 1906. Appeal, No. 52, April T., 1906, by plaintiff, from judgment of C. P. No. 1, Allegheny Co., Dec. T., 1900, No. 356, on verdict for defendant in case of M. H. Pickering v. F. J. Breen, The Knoxville Land Improvement Co., and Mathew Best. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY and HEAD, JJ. Affirmed.

Replevin for household furniture. Before BROWN, J.

The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:

[The suit arises on an action of replevin to recover goods leased by M. H. Pickering to F. J. Breen, a tenant of the Knoxville Land Improvement Company, and by the latter company

seized, upon a landlord's warrant, for unpaid rent. The warrant was issued and delivered to the constable October 8, 1900. The constable, upon that and subsequent days, between sunrise and sunset, endeavored to levy, but was unable to do so because the tenant kept the house locked; but on the evening of October 12, about 7:30, the constable, discovering the goods were being removed, seized them on his warrant. The act of the tenant having prevented the seizure between sunrise and sunset, neither he, the tenant, nor the plaintiff, whose bailed goods were on the premises, can set up the general sunrise-to-sunset rule in bar of the levy. Otherwise a tenant, and those under him, could prevent any levy by running an all-night house—opening a few minutes after sunset and closing a few minutes before sunrise. The general rule implies an open house between sunrise and sunset, with the opportunity to levy.] [1]

[It is clear that the tenant was in arrear, and owed rent. Therefore there was due, by the strict terms of the contract, $120, and the landlord's warrant was issued. The constable, as we have suggested, made an effort to make the levy—made an effort to make the levy between sunrise and sunset, as suggested by the learned counsel for the defendant, and, failing in that, made a levy at the time the goods were being taken out, after sunset. Assuming, if you so find from the weight of the evidence, that there was rent due, then it follows, as a matter of law, that the Knoxville Land Improvement Company had the right to issue the warrant, it follows, under the rule we have laid down, that the constable had the right to make the levy.] [2]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1, 2) above instructions; (3) refusal of binding instructions for plaintiff.

*James T. Buchanan*, for appellant.—A distress executed at night is an unlawful trespass: Sherman v. Dutch, 16 Ill. 282; Fry v. Breckinridge, 7 B. Mon. (Ky.) 31; Tutton v. Drake, 5 Hurlston and Norman, 647.

A stranger may remove his goods at any time before they are distrained, even with the purpose and object in view of

avoiding a distress: Adams v. LaComb, 1 Dall. 440; Ball v. Penn, 10 Pa. Superior Ct. 454; M'Geary v. Raymond, 17 Pa. Superior Ct. 308; Scott v. McEwen, 2 Phila. 176; Sleeper v. Parrish, 7 Phila. 247; Ellis v. Lamb, 9 Pa. Dist. Rep. 491.

*W. D. Grimes*, for appellee, cited: Kleber v. Ward, 88 Pa. 93; Myers v. Esery, 134 Pa. 177; Grace v. Shively, 12 S. & R. 216.

OPINION BY ORLADY, J., June 30, 1906:

Francis J. Breen, by an article of agreement dated September 11, 1900, became the tenant of certain described premises in Knoxville borough from October 1, 1900, to March 31, 1901, at a monthly rental of $20.00, due and payable on the first day of each month after October 1, 1900. By consent of the landlord, he was permitted to take immediate possession of the premises, before the beginning of the term. The lease contained a provision that "should the aforesaid rent or any part thereof remain unpaid after the same shall be due and payable, the whole amount of rent for the unexpired term shall thereupon become due and payable, and the lessor may, at his option, consider the lessee as a tenant at will, etc."

On September 12, Breen purchased from M. H. Pickering, who was engaged in the furniture installment business, a number of articles for use in his household, consisting of furniture, carpets, bedding, etc., which were placed in his home. On October 8, no rent having been paid, and under the terms of the lease all the rent being then due, the landlord issued his warrant to Mathew Best, a constable, directing him to levy and make the rent, together with the costs, of the goods and chattels of Breen, on the premises, according to law.

On October 9, Breen notified Pickering, by a writing, that he had been suddenly called away to accept a new position, which necessitated his giving up his home in Pittsburg, and concluded " I cannot be under the additional obligation of $18.00 per month, on the furniture, so will kindly ask you to take the same back and cancel the lease, and hope the $20.00 paid will repay you for your expenses. The key of the house can be had from my wife, in care of Charles Schuchman, 85 Lincoln avenue, Montooth borough."

The constable, on the day he received his warrant, and on subsequent days between sunrise and sunset, made six or eight ineffectual attempts to levy on the goods, but was unable to do so for the reason that the doors were securely fastened by locks, the blinds drawn close and the house unoccupied.

On the afternoon of October 12, several employees of Pickering went to 85 Lincoln avenue, Montooth borough, secured the key to the Breen house, whither they proceeded, but did not arrive until about half-past seven o'clock, and it being after dark, they were obliged to light the gas in order to remove the property from the house. While Pickering's employees were in the act of removing the personal property from the house, the constable appeared and seized the goods under his landlord's warrant. Whereupon Pickering brought this action of replevin, and retained possession of the goods; on the trial the defendant landlord recovered a verdict of $52.68, the value of the goods seized, the jury specially finding that there was $120 of rent due.

In the charge to the jury the court said : " Mr. Pickering is entitled to recover only if he, through his agents, got these goods at a point beyond the line of the premises. If he got them out on the pavement, then they were not subject to this distress. In that case, there would be a verdict for the plaintiff, because this is not a suit brought by the plaintiff to get the very goods which the constable had seized. In order to get them out of the possession of the constable, he had to issue this replevin and give bond. Mr. Pickering is entitled to recover only, if these goods were on the pavement at the time the levy was made, and if you so find, then your verdict would be for the plaintiff. On the other hand, if the property was upon the premises, upon the lawn, partly on the lawn and partly on the porch, then your verdict would be for the defendant, . . . . because the property being liable for rent, it was under lawful distress, and is responsible over to the landlord for the rent. If the weight of the evidence satisfies you that the property levied upon was not on the premises—and it was not upon the premises if it was out upon the pavement—then your verdict would be for the plaintiff, M. H. Pickering. . . . The act of the tenant having prevented the seizure between sunrise and sunset, neither he, the tenant, nor the plaintiff, whose bailed

goods were on the premises, can set up the general sunrise-to-sunset rule in bar of the levy. Otherwise a tenant, and those under him, could prevent any levy by running an all-night house, opening a few minutes after sunset and closing a few minutes before sunrise. The general rule implies an open house between sunrise and sunset, with an opportunity to levy."

In taking the property from the premises, Pickering was acting in behalf of Breen, the tenant, and his rights must be measured by the standard that could be asserted by Breen. The rent was unquestionably due and unpaid, a number of attempts had been made to levy on the goods between sunrise and sunset, which were rendered ineffectual through the act of the tenant, and the jury has found as a fact, after a fair submission to them, that the goods were seized by the constable on the premises, while they were being moved in the nighttime through the concerted action of Breen, the tenant, and Pickering, the bailor of the goods.

The right of a landlord to seize goods under such circumstances is fully established in Myers v. Esery, 134 Pa. 177: " A landlord's right of distress for rent extends to furniture leased by the owner thereof to the tenant, as a keeper of a boarding house on the demised premises."

The facts in this case are much stronger, as the tenant placed the goods in the house for the purpose of using them as the necessary equipment of his home, and as between Pickering and the landlord, they were unqualifiedly the property of the tenant and subject to this distress. No authority is needed for the general proposition that the exercise of the right of distress for rent in arrear must be had whilst the goods are upon the demised premises, and, that all goods upon the premises, whether belonging to the tenant or other persons, with some exceptions designed to aid in the encouragement of trade not necessary to mention here, are subject to such distress : Ball v. Penn., 10 Pa. Superior Ct. 544.

In Grace v. Shively, 12 S. & R. 216, it was held that the removal of goods in the nighttime is in itself clandestine and sufficient evidence of fraud. Our act of March 21, 1772, is the same in substance as the statute George II, chapter 2, paragraph 1, from which it was copied very nearly verbatim : " Where any person shall fraudulently or clandestinely convey

away or carry off, or from, the demised premises, his goods or chattels, to prevent the landlord or lessor from distraining the same for arrears of rent so reserved, it shall be lawful for the landlord or lessor, or any person or persons by him, for that purpose lawfully empowered, within the space of thirty days next ensuing such conveying away or carrying off such goods or chattels, to take and seize such goods and chattels wherever the same may be found, as distress for said arrears of such rent," etc.

Where the undisputed evidence shows that the tenant withdrew from the demised premises, placed the house under lock and key, and later attempted to remove the goods in the nighttime, during the life of the landlord's warrant, such conduct would be held, as a matter of law, to be fraudulent and clandestine.

The rent being due and its payment being asserted under a warrant of which the tenant would be presumed to have notice, as he had provided in his lease for it being issued under just such a contingency, and the goods being removed in the nighttime, he is not in a position to claim the sunrise-to-sunset rule, after having prevented the execution of the warrant within the usual time. Nor was Pickering, whose only right on the premises depended upon the order of Breen, in any better position. See Owens v. Shovlin, 116 Pa. 371; Esterly Machine Company v. Spencer, 147 Pa. 466.

However, this case does not stand on such a narrow margin. The tenant admitting that he had deserted the leased premises, and turned the key over to a stranger, thus making him his agent, and without paying any rent, sought to relieve himself of all liability on his bailment contract with Pickering by returning the goods ; and the bailor, in attempting to secure the goods, elected to remove them in the nighttime without the knowledge of the landlord, it is the dictate of common sense, as well as the voice of positive authority, that he stands in the place of the tenant.

The court properly held that the distress was a lawful one. The jury resolved the disputed facts in favor of the landlord, under a charge which fairly submitted them for their consideration. The assignments of error are overruled.

The judgment is affirmed.