Letzic and Letzic *v.* Kaufman, Appellant.

Argued March 17, 1933.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld and James, JJ.

*Ben L. Stone,* for appellant.

*Joseph P. Brennan,* and with him *J. E. Brennan,* for appellees.

Opinion by Cunningham, J., July 14, 1933:

Appellant obtained a judgment against Alex Sacadakis and John Coosidis, who conducted a restaurant, under the name of "Sacadakis and Coosidis,"

in a building leased from Samuel and Benjamin Letzic, appellees herein. After the sheriff made a levy on certain goods in the restaurant, under an execution upon the judgment, appellees notified him they were the owners of the goods levied upon, having previously purchased them, through their attorney, at a constable's sale under a distress warrant for rent. Appropriate interpleader proceedings ensued and an issue was framed, in which appellees became the claimants and appellant the defendant. The issue at the trial was whether or not the proceedings under the distress warrant were regular and in compliance with the act of assembly. The jury found in favor of the claimants; the trial court denied defendant's motion for judgment, n.o.v. and he now appeals to this court.

The facts, as developed by a rather meager record, are that appellees issued a landlord's warrant in regular form to the constable on March 3, 1930. On the same day, that officer went to the restaurant of the tenants, made an unsuccessful demand for the rent due, levied on all the furnishings in the restaurant, posted a notice of the distress on the window, listed the articles levied upon, attached this list to the landlord's warrant, and left a copy with Coosidis, who was on the premises during the time of the levy. The tenants accepted service of the original warrant, as evidenced by the following upon the reverse side, "Service of this writ accepted this 3rd day of March, 1930. Alex Sacadakis John Coosidis." As the constable was about to close the restaurant, Coosidis asked if it could not be left open for a few days to sell the perishable foodstuffs on hand, and to afford an opportunity to see if the rent could be raised. The constable consulted with the landlord, found that he agreed, and accordingly gave permission to keep the restaurant open. The tenants proceeded with their ordinary business up to the date of the sale. Appraise-

ment was had, notices of the sale were posted upon the premises and nearby posts and buildings, and the goods were regularly sold on March 17, 1930. Certain witnesses for appellant testified they saw no notices of the sale, but this question was specifically put to the jury and decided in favor of appellees.

Appellant presents two contentions: first, that there was not a sufficient seizure of the goods; and second, that no proper notice of the distress was given to the tenants. In our opinion, neither is sound.

There was sufficient evidence to indicate that the constable assumed control over the goods. In Furbush v. Chappell, 105 Pa. 187, 190, the Supreme Court said: "A landlord may verbally distrain for the nonpayment of rent, and he may, by parol, authorize a bailiff to distrain. As a general rule, to render a distress complete, there must be a seizure of the property distrained upon; but a very slight act is sufficient to constitute a seizure in contemplation of law. It need not be an actual seizure of the particular goods. If the landlord gives notice of his claim for rent, and declares the goods which he names shall not be removed from the premises until the rent is paid, it is a sufficient seizure." This was quoted with approval in our recent case of Potts Dept. Store v. Lutz & Sweigart, 98 Pa. Superior Ct. 545, 549.

Here the constable demanded the overdue rent, exhibited his warrant, and inventoried the goods levied upon. We think it immaterial that the restaurant was permitted to remain open until the date of the sale. The fact that the tenants requested this indulgence in order that they might sell the perishable foodstuffs on hand indicates they regarded the furnishings as having been distrained upon. While it is true food was sold during this period, none of the articles listed in the inventory were removed from the premises; they were obviously regarded as subject to the distraint; in addition, the fact of the distraint was ad-

vertised by the notice posted on the window and the subsequent notices of the sale. We have not been referred to any case holding that permission to use temporarily the articles distrained upon has been construed as nullifying their seizure. On the contrary, the granting of the tenants' request seems, under the circumstances here present, to have been merely a courtesy extended to them in order to minimize their loss. An examination of the earlier statutes and decisions upon the subject of distress for rent indicates that they were concerned with protecting the interests of the tenant, and, as far as possible, relieving him from undue hardship.

Appellant's main reason for objecting on this score is that, as the restaurant was permitted to remain open for business, there was no notice to the world, and particularly to creditors, that there had been a landlord's levy. This contention might be most readily answered by pointing to the posting of the notices —a fact established by the verdict of the jury. Apart from this, however, we do not see why creditors of the tenants have any right to complain. The primary purpose of the distress proceedings is to seize the goods, and the technical requirements of the Act of 1772 were intended for the protection of the tenant, or the owner of the goods, so that they might have full information relative to the exact articles seized and the purpose of the seizure, and be afforded an opportunity to replevy, if they so desired. The statute does not concern itself with the rights of creditors, other than the landlord, and indeed they have nothing to lose, because, in any event, the landlord would be preferred to the extent of one year's rent. Since appellant was necessarily under notice of this preference, he can hardly assert that he was harmed by the indulgence granted the tenants.

We are also of opinion that the landlord's warrant, service of which was accepted by the tenants, operated

as a sufficient notice of the distress. The formalities of the notice are thus set forth in Snyder v. Boring et al., 4 Pa. Superior Ct. 196, 200: "Before an appraisement can be lawfully made five clear days must intervene after the 'distress taken and notice thereof, with the cause of taking, left at the mansion house, or other most notorious place on the premises charged with the rent distrained for' etc. We are of opinion that this notice should be in writing (Wilson v. Nightingale, 8 Ad. & El.; 55 E.C.L. Rep. 1034), and be sufficient to inform the tenant or the owner what are the goods taken and the amount of rent in arrear: Kerby v. Harding, 6 Exch. 234. A mere schedule of the goods levied on, which does not contain notice of 'the cause of taking' is not a compliance with the statute."

Here, the landlord's warrant, addressed to the constable, stated that the tenants were indebted to the landlord in the sum of $3,400 for rent due the 1st of March, 1930, authorized him to distrain upon any goods found on the premises, to retain them in his possession until they could be lawfully appraised, and, after due notice, to sell them for the best price obtainable in satisfaction of the rent and the causes of the distress, returning any surplus to the tenants. The constable attached to the warrant a schedule of the articles seized, and, as stated above, had the tenants accept service of the writ on its reverse side. Since the acceptance of service establishes receipt of the warrant, the tenants thereby received notice in writing setting forth the goods taken, the cause of the taking, and the amount of the rent in arrears. In this case it is immaterial that the notice did not give the date of the taking; this is important only where tenants are not present at the time of the levy (Whitton v. Milligan, 153 Pa. 376, 26 A. 22), as its purpose is to advise them of the time within which they have a right to replevy the goods. While it is the usual

practice to give the tenant a separate notice of the distress, we see no reason why failure to do so should be considered a fatal defect here, particularly as the record indicates that the tenants received a copy of the warrant as well. Moreover, it is obvious from the charge of the court that the only question raised at trial was the sufficiency of notice as to the sale itself.

Upon a review of the record, we are convinced the court below was entirely justified in refusing appellant's point for binding instructions and denying his motion for judgment notwithstanding the verdict.

Judgment affirmed.