American Seating Co. *v.* Murdock et al., Appellants.

Argued April 20, 1933.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Chas. M. Christler,* and with him *Wylie McCaslin,* for appellants.

*Robert White,* and with him *Alvah M. Shumaker,* for appellee.

OPINION BY JAMES, J., December 16, 1933:
This is an action of trespass brought by the Ameri-

can Seating Company to recover the value of 426 theatre chairs alleged by plaintiff to have been converted by defendants.

It appears that on January 14, 1930, the defendants leased the theatre premises, owned by them in New Castle, to one Max Cransfield for a period of eight years, commencing January 1, 1930, at a total rental for the entire term of $61,800, payable in monthly instalments, in advance, of $450 during the first year of the term, and at a graduating increased monthly rental thereafter. On January 25, 1930, the plaintiff company entered into a conditional sale agreement with Cransfield (which agreement was filed in the prothonotary's office) for 426 theatre chairs, which were subsequently delivered to the leased premises and 412 of which were installed in place.

These theatre chairs, title to which was retained by plaintiff and full payment for which was not received by it, are the subject matter of this litigation.

The plaintiff in its statement of claim alleged a conversion as of May, 1930, the basis of which allegation was that the defendants had taken possession of the theatre at that time and had likewise taken possession of the theatre chairs in question. These allegations, however, were not sustained by any evidence and can be dismissed from further consideration. The plaintiff likewise alleged a subsequent conversion by defendants, the basis of which was that defendants sold and conveyed, or agreed to sell and convey, the theatre chairs to one David Victor. In support of this allegation, plaintiff introduced evidence that on September 6, 1930, defendants had leased the theatre premises including the theatre chairs to Victor, and gave him an option to purchase all the fixtures and equipment therein. Whether the assertion of ownership of the chairs by the defendants constituted a

conversion depends on a determination of the questions which we shall hereafter discuss.

The defendants did not deny original ownership of the theatre chairs by the plaintiff, but their defense was that title thereto had passed to them on July 7, 1930, by virtue of a sale thereof under distress proceedings. Evidence was introduced that Cransfield was in arrears for three months' rental for the months of April, May and June, 1930; that a landlord's warrant was placed in the hands of a constable directing him to levy upon all personal property on the leased premises for the collection of $60,450, representing the balance of rental for the entire term. The constable testified that a levy had been made by him on June 23, 1930, and that a copy of the notice of distress and a list of the articles distrained was given by him that same day to Milton Frank, the manager in charge of the theatre; that an appraisement was duly made on June 30, 1930; that he on that day posted three bills (of which more will be said) advertising the sale for July 7, 1930; that a sale was duly had on July 7, 1930, at which the defendants were the highest bidders and at which all of the theatre chairs in question were sold by him to them.

The case was submitted to the jury and a verdict was returned in favor of plaintiff for $2,691.37. Defendant subsequently moved for judgment non obstante veredicto and for a new trial. The motion for judgment n. o. v. was refused. The court, however, deeming the verdict excessive, made an order granting a new trial unless the plaintiff filed a stipulation remitting such part of the verdict as was in excess of $1,927.12. The plaintiff filed a stipulation of remittitur in accordance with the order of court and judgment was entered in favor of the plaintiff for $1,-927.12, from which judgment the defendants have appealed.

The first assignment of error complains of the trial court's refusal to grant binding instructions in favor of the defendants; the second assignment complains of the refusal to enter judgment non obstante veredicto in their favor. We are of the opinion that both of these assignments of error must be sustained.

It is clear from a careful reading of the entire record, that despite the original averments of conversion set forth in plaintiff's statement of claim, already mentioned, the sole issue involved at the trial of this case was whether or not defendants acquired good title at the landlord's sale under the distress proceedings. That inquiry involved passing upon the regularity of the distraint proceedings and the subsequent sale, and it is to that inquiry alone, we too shall confine ourselves on this appeal.

The undisputed and uncontradicted testimony in this case shows that the tenant of defendants defaulted in the payment of rental for the leased premises. The testimony, likewise, both oral and documentary, shows that a landlord's warrant dated June 21, 1930, was issued and a levy made thereunder on June 23, 1930; that all the goods on the leased premises were inventoried and that a notice of the distress was left with the person in charge of the theatre. It is true that in performing the steps just recited the constable was acting as an agent of the landlord and that no presumption of regularity is applicable. However, the plaintiff did not in any manner dispute or question that testimony and under the circumstances we deem those facts conclusive.

It seems that plaintiff does question whether Milton Frank, upon whom the notice of distress was served, was the manager of the tenant of defendants. From the evidence in the case that contention is not well founded. It appeared that Cransfield disappeared some time after the theatre was leased to him and that

one O'Connor continued to run the theatre. Plaintiff's own testimony shows that Milton Frank was employed as manager by O'Connor, and it is this same O'Connor that the plaintiff alleged in the alternative in its statement of claim was the original lessee of the defendants, and to whom plaintiff sent a telegram, which was received after the sale. There is no evidence whatever tending to show that the leased premises up to the time of distraint were held by any one adversely to Cransfield. Therefore although the connection between Cransfield and O'Connor was not disclosed, it must be deemed that Frank was directly or indirectly the manager of the tenant of defendants, and that he was the proper person upon whom to serve the notice of distress in this case.

The contention of plaintiff that the levy was rendered irregular because the theatre was permitted to to remain open for business after the levy, is not well taken: Letzic et al. v. Kaufman, 109 Pa. Superior Ct. 205, 167 A. 488.

It is now well settled that in distraint proceedings under the Act of March 21, 1772, 1 Sm. L. 370, a constable begins to act as an officer of the law when an appraisement is required, and that as to all the steps in the proceeding from such time on, including appraisement and sale, a presumption of regularity attaches: Mortgage B. & L. Assn. v. Van Sciver, 304 Pa. 408, 155 A. 920.

In our opinion no evidence introduced in this case was sufficient to defeat the presumption of regularity which attached to the subsequent steps of the distraint proceedings, or to justify submission of the case to a jury. We are aware that the presumption of regularity involved is a rebuttable one, but we feel that unless some evidence is introduced which rebuts it, the case should not be submitted to a jury for speculation or conjecture.

Much is sought to be made by plaintiff of the fact that the affidavit of the appraisers shows that the date was originally typewritten "30th day of July, 1930" and that some time after the sale "July" was crossed out and "June" written in. There is no intimation, whatever, by plaintiff that the appraisement was not made before the sale, nor is it denied that the notices of sale posted on the same date as the appraisement bear date of June 30, 1930, and that the sale occurred on July 7, 1930. We, therefore, believe under the circumstances of this case the evidence of the correction was immaterial and in nowise tended to rebut the presumption of regularity applicable to the appraisement.

The plaintiff further contends that there was not a proper appraisement of certain unassembled seats in the cellar of the theatre numbering fourteen. The constable testified that the appraisers went down in the cellar and made an appraisement there. Milton Frank, called by plaintiff in rebuttal, testified he was present when the appraisement was made and that he did not "think" they went into the cellar. One of the appraisers was likewise called who testified he did not "remember" whether he had been in the cellar. We do not deem this vague testimony, negative in character, sufficient to rebut the presumption of regularity, especially in view of the positive testimony of the constable that the appraisers did go into the cellar. Moreover, any defect in appraisal of the fourteen chairs, having in mind their relation to the entire appraisement would not vitiate the proceedings. See Natl. Cash Register Co. v. Kline, 99 Pa. Superior Ct. 299.

We believe, therefore, that no question can fairly be raised as to the regularity of all of the steps of the distraint proceedings up to and including the appraisement. It is clearly established that rent was in arrear and that a levy was made and notice thereof together

with a list of all the articles levied upon was served upon the person in charge of the premises for the tenant. The evidence established that an appraisement was duly made by two reputable freeholders (admitted to be such by the plaintiff) who were properly sworn before making their appraisement.

The court below, in refusing judgment non obstante veredicto, seems to agree that all the steps of the distraint proceedings above discussed, were regular. It justifies submission of the case to the jury on the sole question whether or not there was proper public notice of the sale.

The testimony of the constable was that he posted one notice of sale on the rear door of the theatre, one on a pole in the vicinity of the rear of the theatre and one in the office of the alderman in the city. Plaintiff, in rebuttal, introduced the testimony of a witness, Milton Frank, that he did not observe any notice on the rear door of the theatre; that he saw one notice on a pole very close to the rear of the theatre building, and that the notice was attached to the inside of the pole facing the building rather than on the side facing the alley where it would have been more observable. Another witness testified that he saw one notice on the inside of a pole facing the theatre building.

The Act of 1772 (supra) provides that : "After such appraisement [such sheriff, under sheriff or constable] shall or may, after six days' public notice, lawfully sell the goods and chattels so distrained, for the best price that can be gotten for the same ......"
There is nothing in the act nor is there any statutory provision defining what shall constitute the public notice required by that act, either as regards the number of notices or the place or places where they should be posted. Compare Section 42 of the Act of June 16, 1836, P. L. 755, 12 PS 2312, relating to sales of personal property on executions which provides that,

"Notice thereof shall be given by such officer, during at least six days, by not fewer than six handbills, to be put up at such places as he shall deem best calculated to give information to the public of such sale."

In addition to the existence in the case of a presumption that proper public notice was given, we have the positive testimony of the constable that he posted three notices in three public places, to wit, upon the rear door of the theatre, on a telephone pole and in the alderman's office. The testimony of plaintiff's witnesses, insofar as they gave positive testimony, confirmed the constable's testimony that there was a public notice posted on a telephone pole within the vicinity of the theatre. Insofar as the testimony of the witness, Milton Frank, is concerned, that he did not observe a notice posted on the rear door of the theatre, such testimony was negative in character and not sufficient to rebut the presumption of regularity supported as it was by the positive testimony of the constable that such a notice had been posted. Further, there was no attempt to deny that a notice was posted in the office of the alderman, a public place.

We are of the opinion that the negative testimony introduced by plaintiff was not sufficient to rebut the presumption of regularity of proper public notice and thereby vitiate a sale conducted by an officer of the law. Under the circumstances of this case, we do not feel it proper to condemn a sale held pursuant to statutory authority merely because a notice was posted on a rear door of the building instead of the front door, or because a notice was posted on the inside instead of the outside of the pole. We believe the character of notice given in this case under all the circumstances showed a compliance with the Act of 1772. Although a sale held under distraint proceedings is not a judicial sale in the commonly accepted meaning of that term, it is a sale held pursuant to statutory authority. There

is a comparable policy, therefore, in upholding such a sale when fairly conducted and unless substantial defects are disclosed. The objections here raised under the circumstances of the case we deem to be without merit. The evidence clearly shows that ten to fifteen persons were present at the sale, that four or five persons were active bidders, and further there is nothing to show that the amount realized at the sale was arbitrarily inadequate considering the nature thereof. In reaching our conclusion we have also taken into consideration that the defendants had no knowledge of plaintiff's interest in the theatre chairs until after the sale. Although notice of such interest would not have exempted the chairs from levy and sale, the lack of such notice can not be overlooked in passing upon the good faith of the defendants.

Only one other matter merits comment. Plaintiff before us has contended that the acceleration of the rental for the entire balance of the term and distraint for that amount were not justified under the lease in question. The lease clearly provides that upon default in the payment of any instalment of rental as the same became due and payable, the entire rent for the balance of the term should at the option of the lessors at once become due and payable as if by the terms of the lease it were all payable in advance. That such a provision is valid in this state is well established: Goodwin v. Sharkey, 80 Pa. 149; Owens v. Shovlin, 116 Pa. 371, 9 A. 484; Platt Barber & Co. v. Johnson, 168 Pa. 47, 31 A. 935. Since the defendants were within their rights in accelerating the rental for the balance of the term of the lease, a distraint for the entire rental which became due and payable by reason of such acceleration was proper.

The judgment is reversed, and here entered for defendants.