## CRAWFORD VS. NEFF.

Land not described in a conveyance does not pass as appurtenant to other land unless it be parcel.

In cases where the statute of limitations might apply, the rules for presuming a conveyance cannot be substituted by Courts.

The Courts have applied the principles of the statute of limitations, to incorporeal hereditaments, by presuming a grant, after an adverse user of twenty-one years.

Error to Common Pleas of Chester County. No. 12 March Term, 1854.

The suit was brought to recover the two full equal undivided one-hundredths parts of the lot known as the Bath lot, in the town of Bath in West Pikeland township, Chester County, the lot containing in the whole 101 and 59 one-hundredths perches. James Bones was the owner of an hotel and farm of 152 acres, which comprised within its limits a spring known as the Yellow Springs. It was a place of summer resort for visitors. He conceived the idea of making a town. He laid out his farm in lots, and disposed of a few by a lottery. The Bath lot, containing the spring, with its improvements was sold in parts to each lot owner,

one hundredth part thereof. Some short time thereafter, another hotel was erected, near the spring. They became rival hotels. One was owned by Holman, and the other by Bones. Bones occupied up to 1830, and was succeeded by Olwine. Mrs. Holman occupied up to 1844. The Bath lot was principally used, by the boarders of both hotels, having free access to the springs and Bath house. The defendant relied on, adverse possession; second, on the presumption of the grant; and third, that Sheriff's sale of lots 74 and 75 passed the rights in the Bath lot in controversy as appurtenant to said lots to the purchaser. The Court's charge was inter alia as follows: "But, gentlemen, the defendant has made another point, to wit: that the right to the use of the Bath lot is appurtenant to each of the lots 74 and 75, and passed with said lots to Mrs. Holman by the Sheriff's sale. You will recollect, that, when the sale of these lots was made by the Sheriff, nothing was said about the Bath lots; and it is these two equal, undivided, one hundredths parts, for which this suit is instituted. The plaintiff contends, that they are distinct, and separate from the lots themselves, and can be sold separately, while the defendant avers, as you will observe, that they are appurtenant, and were sold with these lots. It is a matter of history and notorious, that about the year 1814, James Bones made a lottery of a large number of lots of land, in what he then called the town of Bath. A draft of these lots and of this town has been before you. Believing that the tracts would sell better by so doing, he attached to each of the lots sold, a right to the Bath lot, and the spring of water therein. The lots were intended to be 100 in number, and the rights to the Bath lot were divided into 100 parts, each owner of a lot, holding a right in the Bath lot, in common with the other 99. The deeds show this state of affairs, and they show, also, that the contract between James Bones and the purchasers of lots was, that the right should not be extended beyond 100. What then was intended by the conveyance of one hundredth part of the Bath lot? Not certainly the ground; for it was undivided, and if divided, gave no interests, could give no interests, without interfering with the rights of others. To my mind, the rights conveyed by

the deed, to one hundredth part of the Bath lot, gave simply a common right to one hundred persons to go from the high-way to the natural spring, and to use it in common with the others. Gave simply a common right to one hundred persons to go upon all and every part of the ground, a common interest over the whole and every part, which could not be divided nor used apart, either in one, or more than one, and which, in verity, gives a water right to the spring, which was appurtenant to the lots. In this view of the case, the sale by the Sheriff of these lots 74 and 75, to Mrs. Holman, passed the right in the Bath lots, now in dispute, to her, and that she held them under that sale. I have therefore to say to you in this aspect of the case, that the plaintiff is not entitled to recover, and your verdict must be for the defendant. The verdict was for defendant.

The plaintiff then took a writ of error, complaining of the action of the Court in directing a verdict for the defendant.

*U. V. Pennypacker, Esq.*, for plaintiff in error argued, that as the levy and sale was of lots 74 and 75, as the same are laid out, and marked on an original plot of the town of Bath, as the property of Abraham Olwine, and the interest in the Bath lot was not mentioned in the levy, or any of the proceedings; the two lots, 74 and 75, are separate and distinct from the Bath lot. It has been ruled, that by the grant of land *cum pertinentiis*, another house or land does not pass, unless it be found to be parcel; 4 Comyns Digest; Grant, 314; 3 Saunders Reports, 401; Note, 2; Grubb vs. Guilford, 4th W. 244.

*William Darlington, Esq., contra*, cited as to the statute of limitation; Law vs. Patterson, 1 W. & S., 191; 2nd. as to the presumption of a conveyance, Kingston vs. Lesley, 10 S. & R., 390; Lynch vs. Cox, 23 Pa. 265; Webb vs. Dean, 9 H., 29; Nickle vs. McFarlane, 3 W. 167; Doe vs. Tenwick, 5 B and A., 232.

The Supreme Court reversed the decision of the Court below on September 14, 1854, in the following opinion by

LEWIS, J.

In the first assignment of error, the Court of Common Pleas is represented as telling the jury that they had a right to

presume a grant from the single fact of an adverse possession of nineteen years. This is not a fair statement of the instructions actually given on this part of the case. Those instructions left it to the jury to say "whether the testimony disclosed *acts of ownership of a character to create the presumption, of a grant.*" "If they found the existence of *such acts of, ownership coupled with an adverse possession of nineteen years,* they were allowed to presume a grant, and to find a verdict, for the defendant." This is very different from the instruction complained of. The instruction assigned for error was not given. That which was given is not assigned for error and is therefore not reviewed.

The second assignment does not seem to complain of error in *law.* The remarks of the judge are merely referred to as *"an imaginative peroration,"* to the error set forth in the third specification which we proceed to consider. The local history in relation to the lottery, and the contracts for the purchase of lots, is not before us in such a shape, as to form an element in the discussion. Were the facts referred to fully established by evidence, and properly placed on the record, we do not see how they could change the rights of the parties as finally defined by their conveyances. In 1814 James Bones was the owner of the tract of land, on which he laid out the town of Bath containing 101 lots. He conveyed two of those lots numbered 74 and 75 to different purchasers by metes and bounds. In each deed, there was also a conveyance of "one full equal undivided one hundredth part of the Bath lot," describing it also by metes and bounds, and stating it to contain with its proportion of Washington street 101 59-100 perches of ground more or less. These lots were conveyed "with all privileges, advantages, and appurtenances to the same appertaining. There is nothing in these deeds which makes the Bath lot appendant or appurtenant to the others. Nor is there anything in the nature of the property which makes either necessary to the full and free enjoyment of the others. It may be very convenient for the owner of a town lot to have an outlet for pasture or for planting, or to have one with a spring on it for the use of himself, his family, and his cattle. But these circumstances of convenience are insuffi-

cient to overthrow the rule of law that land will not pass as appurtenant to other land unless it be found to be parcel. It must be remembered that the interest conveyed in the spring lot differs in nothing from that conveyed in the other lots, except merely in the blending and unity of possession with the other tenants in common. Tenancies in common differ in nothing from sole estates, but merely in that of unity of possession. There is a great difference between an *estate in common* and a *right of common*. The first is a corporeal hereditament, while the last appears from its very definition to be an incorporeal hereditament. The first is the land itself;—the other a profit which a man hath in the land of another; 2 Blackstone's Commentaries, 32; Ibid, 194. In Hill vs. Grange, 1 Plowden, 170, it was agreed unanimously that land cannot be appurtenant to land in the true sense of the word *appertaining*. For a thing of substance cannot be appurtenant to a thing of the same substance; and nothing can be appurtenant to another but where it is of another nature and substance. In Grubb vs. Guilford, 4 Watts, 244, it was held upon authorities there cited, that by the grant of a messuage *cum terris pertinentiis*, land *occupied continually with the house* passes, though *land* is not properly appurtenant to a house; yet by the grant of *land, cum pertinentiis* another house or land does not pass, unless it be found to be parcel. The spring lot was not shown to be parcel of the other lots. Under these circumstances the levy and sale of "lots 74 and 75 as the same are laid out and marked on an original plot of the town of Bath" did not necessarily pass any right to the Bath lot, and the Court fell into an error in holding that it did, and that on that ground, "the plaintiff was not entitled to recover." For this cause the judgment is to be reversed.

    Judgment reversed and a *venire facias de novo awarded*.

---

On the second trial, the Court charged the jury *inter alia*, as follows: "This was an action of ejectment, brought by Thomas Crawford against Henry Neff and Maria Neff, to recover the two equal undivided one hundredths parts of a lot of land called "The Bath Lot," not in possession of the

defendants. The plaintiff, to sustain his action, has given in evidence various deeds as follows : Deed from James Bones to Enos Miles, conveying lot No. 74, together with one hundredth part of "The Bath Lot." A deed from Enos Miles to Abram Olwine of the same lot and bath right as in the former deed. By this means, the said Abram Olwine became seized in fee of one hundredth part of the "Bath Lot." Next the plaintiff has given in evidence a deed from James Bones and wife to Dr. William Darlington, conveying lot No. 75, together with one hundredth part of the bath lot; also a deed from Dr. William Darlington and wife to Abraham Arms, for the lot and bath right. A deed from Abraham Arms to Jacob Dutton. A deed from Jacob Dutton to Abraham Olwine, for the same lot and the same interest in the Bath lot. In this way, the plaintiff traces from James Bones and wife to Abraham Olwine, a legal title to the lots No. 74 and 75, together with two one hundredths parts of the Bath lot, who being thus legally entitled to these separate interests, the said Abraham Olwine conveyed to the present plaintiff, Thomas Crawford, not the lots No. 74 and 75, but the two equal undivided one hundredths parts of the Bath lot. It is these two equal undivided one hundreths of the Bath lot, that the present action seeks to recover, and as the plaintiff has shown title by regular conveyance from James Bones and wife to himself, he will be entitled to your verdict, unless the defence has succeeded in establishing a better legal title. To make good her defence, the defendant has produced before you the following conveyances : A deed from James Bones and wife to Charles Dockerty, for lot No. 38 and one hundredth part of the bath lot. A deed from Charles Dockerty to Frederick Holman for the same premises. A deed from James Bones and wife to Daniel McCurdy, for lot No. 39, and one part of the bath lot. Deed poll from Cromwell Pierce, Sheriff, to Frederick Holman for lot No. 39 with one hundreth part of the Bath lot, sold as the property of the said Daniel McCurdy. A deed from James Bones and wife to William Steadham for lots 40 and 91 and two one hundreths parts of the Bath lot. A deed from William Steadham to Thomas Pennypacker for lot No. 40, and one hundreth part of the Bath lot. A deed

from Thomas Pennypacker and wife to Frederick Holman for lot No. 40, and one hundreth part in the Bath lot. These conveyances vest in Frederick Holman et al, a title to lots No. 38, 39, 40, together with three one hundreths parts of the Bath lots, and it seems to be admitted all around. Frederick Holman by will dated May 9th, 1820, devises these lots to his wife, Margaret Holman. By virtue of an Act of Assembly, authorizing a sale; Margaret Holman and Frederick Holman, executors of Frederick Holman, deceased, sold and conveyed by deed lots No. 38 and 39 and two one hundreths parts of the Bath lot to John F. Robinson, and on the same day John F. Robinson conveyed the same premises to Margaret Holman in fee. Margaret Holman and Frederick Holman, executors of Frederick Holman, deceased, sold and conveyed to George Lingen, lot No. 40, with one hundreth part of the Bath lot. The defendant next produced the following deed, to wit: Deed from Margaret Holman to George Lingen, dated the same day as the last mentioned, for 37 A. 64 P., part of the spring tract, including the Bath lot and lots No. 38 and 39. Next we find a deed from George Lingen to Charles Hoffendahl for one equal undivided one-third part of the premises aforesaid. Deed from George Lingen to Henry Neff for one-third of said premises. Deed from Charles Hoffendahl to Henry Neff for his one-third, and another deed from George Lingen to Henry Neff for his undivided third of the 37 A. The defendant further gave in evidence deed poll from Thomas Taylor, Sheriff, to Margaret Holman for lots No. 74 and 75, as the property of Abraham Olwine. The chain of evidence for the defendant, has not been fully, perhaps not carefully noticed in the foregoing observation, but further remarks are deemed unnecessary, on account of the clear statement of truth made by the counsel for the defendant, and it is sufficient here to observe that Henry Neff became possessed of the Yellow Springs property, including lots No. 74 and 75, now in the possession of his widow; and the question for your consideration is, has she the legal right and possession of the two one hundreths parts of the Bath lot, which belonged to Abraham Olwine, in connection with lots No. 74 and 75, and which lots were sold from him by Sheriff Taylor, in 1838. The plaintiff

you will remember, has shown a clear regular title to the premises in question, and unless the defendant has shown a better title, your verdict must be for the plaintiff. You cannot have failed to notice that the defendant rests his case substantially on adverse possession. If a person enters into possession of land, and holds it without more, the presumption is he claims title. Possession of more than twenty-one years, under such circumstances would be adverse, and as such, would give title. To establish adverse possession, it is not necessary there should be a claim on one side, and a denial of that claim by the one in possession. An adverse, hostile, exclusive and notorious possession is where the occupant claims against all persons in subserviency to none; in other words, where he claims and acts as if the land belonged to him. Possession, improvements, repairs, and payment of taxes are acts evidencing claim of title; but, gentlemen, it is the opinion of the Court, notwithstanding the aforegoing affirmation of the defendant's points that the defendant has failed to establish by conveyance an adverse, notorious, visible and exclusive possession of the Bath lot for twenty-one years prior to the bringing of this suit by himself, or those under whom he claims. The action of partition brought by Anthony W. Olwine in September, 1832, for the partition of the Bath lot, in which suit, Abraham Olwine's right to two one hundreths parts of the Bath lot was recognized, disposes any adverse holding prior to that date by the defendant, or those in whom she claims. It is my duty, therefore, to say to you, that the defendant has failed on this point of the case to establish a title unto the defendant. The defendant further relies upon the evidence in the case as creating the presumption of the grant. Possession of land, hostile and exclusive may be accompanied with such acts of probable ownership as to raise the presumption of a grant within the period of twenty-one years, in other words, a conveyance of lots may be presumed from possession for a shorter period than twenty-one years, when coupled with other circumstances, indicative of ownership. The time in which such a presumption may be raised, is not set out with certainty; for it depends to a large extent on the force of the circumstances with which the possession is connected. It may be

raised in twenty or even nineteen years, and in the case before us it does not require an examination into a shorter period. This suit was brought on the 23rd of April, 1852, and the acknowledgement of Anthony W. Olwine, under whom the defendant in part claims ; that Abraham Olwine was possessed of lots and interests in the Bath lot was made in January, 1832, a period of more than 19 years before the question of this suit. The jury will have to say, therefore, whether the testimony, in this case, discloses acts of ownership of the character to create the presumption of a grant. A grant of land might as well be presumed as of a Fishery, or a Common, or of a Way. Presumptions of this nature are adapted from the general infirmity of human nature ; in the difficulty of preserving munimients of title and the public policy of supporting long and uninterrupted possessions. They are founded upon the consideration that the facts are such as could not, according to the ordinary course of human affairs occur, unless there was a transmission of title to, or admission of an existing title, in the party in possession. They may, therefore, be encountered and rebutted by contrary presumptions, and can never fairly arise, where all the circumstances are perfectly consistent with the non-existence of a grant. If the jurymen believe, from the evidence by clear and unequivocal proof, that the possession in the case before us, was actual, continued, visible, notorious, distinct and hostile, even for 19 years, they have the right to presume a grant. I am further requested to say to you, that such possession and such circumstances exist in this case, as would authorize the jury to presume a grant or conveyance of the Bath lot from James Bones or Abraham Olwine to Anthony W. Olwine, and if they shall find that, their verdict ought to be for the defendant. I do not deem it proper thus to charge you, nor can I affirm the third point of the plaintiff, in its terms that the circumstances proved, in this case, will not justify the presumption of the deed from Abraham Olwine for his interest in the Bath lot to Margaret Holman, because the ground of presumption, in such cases, is the difficulty of accounting for the possession or enjoyment without the grant or other legal conveyance. The possession and enjoyment of the Bath lot by Margaret Holman and

3 Wa 5

Anthony W. Olwine being under grants from other persons, accounts for their possession without difficulty, and leaves no ground for the presumption. Whether such possession and such circumstances exist, in this case, as would authorize the jury to presume a grant, is a question for the jury to determine. The evidence being not so conclusive on the one side, nor the other as to make it the duty of the Court to interfere with their conviction. It is undoubtedly true as stated in the plaintiff's point just mentioned, that the grant or presumption in such cases is the difficulty of accounting for the possession or enjoyment without presuming a grant. And it is also clear that the possession and enjoyment of the lots in question by Margaret Holman and Anthony W. Olwine, may be accounted for by grants from others. The possession and enjoyment of the Bath lot by Mrs. Holman may be referred to her purchased rights, and to the purpose of accommodating the guests of her house, independently of any supposed grant to her from Abraham Olwine of his interest; and if the jury believe that she held, under her purchased rights, and not adverse and hostile to Abraham Olwine, the presumption of the grant will not arise, and the plaintiff will be entitled to your verdict.

The verdict was for the defendant.

The plaintiff then took a writ of error, complaining of the portions of the judge's charge as above set forth.

*U. V. Pennypacker, Esq.*, for plaintiff in error argued: "It is the duty of the Court to give an opinion, whether the facts provided will justify presumption;" Newman vs. Rutter, 8 W. 54; Stover vs. Whitman, 6 Bin. 419. What circumstance will justify a presumption is a matter of law; McElroy vs. Railroad, 7th B. 538. Where there is a statute of limitation, mere length of time short of the period prescribed by the statute, can never warrant a presumption; for this would be to presume against the statute; Sumner vs. Child, 2 Conn. 612; 2 Bos. and Puller 206. He also cites 6 Bingham, 173; 22 Pickering, 85; Eldridge vs. Knox; Cowper, 215; Kingston vs. Lesley, 10 S. and R. 389; 2nd Philips, 364.

*William Darlington, Esq., cont, a.*

The Supreme Court reversed the decision of the Court below, on Feby. 4th, 1856, in the following opinion, per

LEWIS, J.

The statute has established twenty-one years adverse possession as a bar to an action for the recovery of lands. Nothing short of that period. is sufficient. Nothing more than that period is required. To substitute a rule of law, by which a jury might presume a conveyance after a greater lapse of time is useless. If after a less period it would be a repeal of the statute. It seems to follow, that in cases where the statute of limitations might apply, the rules for presuming a conveyance cannot be substituted by the Courts; Hurst vs. M'Neil, 1 W. C. C. R. 80; Clark vs. Faunce, 4 Pick. 245; Exparte Dean, 2 Cow. 607; Holyoke vs. Haskins, 5 Pick. 27; Bolling vs. Mayor, 3 Rand. 577; Jackson vs. Moore, 6 Cow. 723.

As the statute does not apply to incorporeal hereditaments which are said to lie in grant, the Courts have applied its principles in the form of rules for presuming a grant after an adverse enjoyment for the period prescribed by the statute in cases of land so occupied. But in these cases the analogy requires that the full period of twenty-one years adverse enjoyment shall be shown. Nothing more is required— nothing less will be sufficient to justify the presumption. In this case the same evidence which was deemed sufficient to defeat the bar under the statute, by showing that the possession was not adverse for the period required, was equally effective in repelling the presumption of a conveyance.

It is true, that if any circumstances exist, tending to justify the belief that a conveyance had *in fact* been made, but cannot be found, the lapse of time short of twenty-one years enjoyment is a circumstance for the consideration of the jury. The existence of the circumstances will be determined by the jury, but their effect, if true, must be passed upon by the Court. If they do not justify the jury in drawing the conclusion, as a matter of fact, that a conveyance had actually been made the Court ought not to submit them to the jury for that purpose; Sharp vs. Thomas, 6 Bing. 419 ; Boston vs. Lecraw, 17 Howard

U. S. 436. In this case we have nothing but the ordinary circumstances of an adverse possession short of twenty-one years. It was error to permit the jury to presume a conveyance from such evidence.

The evidence stated in plaintiff's third bill tended to explain the character of defendant's possession as a tenant in common with others, and ought to have been received. But, independent of it, the defendant had no defence. The Court ought to have given a peremptory direction in favor of the plaintiff's right to recover.

Judgment reversed, and *venire de novo* awarded.

Note:—Another case relating to these Bath lots is Olewine vs. Holman, 23 Penna. 279.