# Wetherill v. Gallagher, Appellant.

*Landlord and tenant—Bailment—Trade fixtures—Boilers.*

Where a tenant of premises in which are boilers owned by the land-lord, takes out the boilers himself and places them on a neighboring lot, and for the purposes of his business installs other boilers which he has acquired on a bailment lease, and subsequently upon default in the stipulated rent for the boilers, the lessors in the bailment lease declare the lease terminated, and assert their right to the possession of the boilers, and thereafter the lessee is declared a bankrupt before the landlord of the premises had distrained for rent, the owners of the boilers have a right to resume possession of their property without being required to restore the old boilers to their former place; nor are they required to pay the landlord the arrears of rent due him by the tenant.

Argued March 25, 1907.   Appeal, No. 7, Jan T., 1907, by defendants, from decree of C. P. No. 5, Phila. Co., June T., 1904, No. 3,922, on bill in equity in case of Robert Wetherill and Richard Wetherill, copartners, trading as Robert Wetherill & Company, v. Francis G. Gallagher, S. Arthur Love, Emma R. M. Love, Fidelity Trust Company, surviving executors of the will of Henry Gibson, deceased, Downing Paper Company and James I. Lineaweaver, Trustee in Bankruptcy of The Downing Paper Company.   Before MITCHELL, C. J., FELL, MESTREZAT, POTTER and STEWART, JJ.   Affirmed.

Bill in equity for an injunction.

MARTIN, P. J., found the facts to be as follows:

### FINDINGS OF FACT.

On March 25, 1902, Francis G. Gallagher became seized of a manufacturing property at Thirty-first and Locust streets in the city of Philadelphia, subject to a mortgage of $21,000, held by the Fidelity Trust Company, surviving executor of the will of Henry Gibson, deceased.

On July 10, 1902, a written communication was sent to The Downing Paper Company by Emma R. M. Love, stating that the title to this property was held by Francis G. Gallagher in trust to secure the payment of moneys advanced for its pur-

chase, and upon payment thereof for her benefit, and offering to rent the property to The Downing Paper Company for twenty-five years for a consideration of $25,000 in stock of the company, $3,000 per annum, payment of the water rent and part payment of fire insurance premium. On the same day Gallagher executed a lease to The Downing Paper Company for the premises, " together with the building thereon erected, machinery, fixtures, tools and implements contained therein." The lessee agreed to make such ordinary repairs to the buildings, machinery and plant as might be required in order to use and operate the same; and it was provided that all betterments in the nature of permanent improvements or additions to the machinery contained in the premises at the date of the agreement, and thereafter placed upon the premises by the lessee, not in the nature of repairs, should belong to and be the property of the lessee, and might at any time during the continuance of the agreement, be removed by the lessee; provided in so doing the buildings and remaining portion of the machinery should be left in good and proper order and condition.

On December 21, 1903, The Downing Paper Company entered into an agreement to lease from Robert Wetherill & Company two 250-horse power boilers to be erected upon the leased premises. The paper company agreed to build sub-foundations, provide buildings properly protected for installing the boilers, and to keep the boilers insured for the benefit of Wetherills until the expiration of the lease of the boilers, and to pay Wetherills for the use of the boilers $1,000 in cash, and $250 rent every thirty days, not to sublet or dispose of the boilers during the continuance of the lease without the consent of Wetherills, or remove them from the leased property; and to surrender them to Wetherills, unless purchased by the company, upon the termination of the lease, at the price stipulated upon the contract. In the event of the failure to pay the rent, Wetherills reserved the right to declare the lease ended, and take immediate possession of the boilers.

S. Arthur Love, the husband of Emma R. M. Love, was treasurer of The Downing Paper Company, and instrumental in securing the company as tenants for the property, and in obtaining the boilers from Wetherill.

On February 19, 1903, Emma R. M. Love executed a general

power of attorney authorizing him to act for her.    There was
a battery of eight boilers in the plant, two of which were re-
moved and the two Wetherill boilers put in the place.    The
Wetherills made the drawing and supervised the location, but
had nothing to do with the removal of the old boilers or erec-
tion of the foundation for the new ones.    No notice was given
by them to anyone of the terms upon which the paper com-
pany obtained the boilers.    Wetherills thought the paper com-
pany owned the building.    The agreement between Wetherill
& Company and The Downing Paper Company was executed
by S. Arthur Love, treasurer.

On March 20, and April 20, 1904, the monthly rental due
for the boilers was not paid.

On May 20, 1904, the paper company was adjudged a bank-
rupt and J. I. Lineaweaver, Esq., was appointed receiver and
subsequently became trustee.

On May 31, 1904, demand was made upon him for payment
of the rent due for the boilers.

On June 20, 1904, The Downing Paper Company and the
receiver were notified that by reason of the nonpayment of
the rent, Wetherills had exercised their right to declare the
lease terminated and take possession of the boilers.

On June 21, 1904, Gallagher executed a declaration in which
it was stated that the purchase money for the property at
Thirty-first and Locust streets belonged to an estate of which
S. Arthur Love and Sally L. Love were trustees, under the
terms of a trust which provided that Sally L. Love should have
the benefit from the estate during her life; and Gallagher de-
clared that he held title to the premises in trust for the estate
and under agreement with said trustees to convey the premises
to Emma R. M. Love, wife of S. Arthur Love, or her appointee,
upon payment of $10,500 with interest and legal charges.

On June 24, 1904, Mr. Lineaweaver, the receiver, executed
an order directing the watchman upon the premises to admit
the representatives of Wetherill & Company for the purpose
of removing the boilers.    On the same day Wetherills received
a communication from counsel for Gallagher alleging that the
boilers were obtained by The Downing Paper Company for
the purpose of replacing other boilers which were part of the
building rented to them as a whole, and claiming that the

new boilers were part of the real estate and stating that he would retain the boilers, and hold Wetherills liable in damages if they attempted to enter the premises. The boilers can be removed by opening the wall of the building in which they are set.

On June 25, 1904, a member of the firm of Wetherills and one of their employees endeavored to gain admission to the building. They presented the order from the receiver to the watchman in charge employed by Gallagher, who refused to permit them to enter.

A bill in equity was filed by Robert Wetherill and Richard Wetherill, copartners, trading as Robert Wetherill & Company, against Francis G. Gallagher, S. Arthur Love, Emma R. M. Love, The Fidelity Trust Company, surviving executor under the will of Henry Gibson, deceased, and The Downing Paper Company and James I. Lineaweaver, trustee in bankruptcy of The Downing Paper Company, praying that the complainants be declared exclusive owners of the boilers, and that respondents be required to deliver up possession; for an injunction to prevent the sale of the boilers; for discovery by Gallagher, S. Arthur Love and Emma R. M. Love as to the ownership of the real estate; and for an injunction to prevent the sale or disposition of the real estate, including the boilers as part thereof; and for a decree restraining respondents from preventing complainants from removing the boilers, and requiring The Downing Paper Company, and Lineaweaver, as trustee in bankruptcy, to specifically perform the terms of the agreement of lease of the boilers and to surrender them to complainants; and for general relief.

A joint and separate answer was filed by Gallagher, S. Arthur Love and Emma R. M. Love, admitting the material averments in the bill, but alleging that the boilers in question had been substituted for others removed from the premises, and stating that The Downing Paper Company were in default in the payment of rent due to Gallagher.

Lineaweaver, the trustee in bankruptcy, in his answer admitted certain allegations of the bill of complaint, required proof of others, and denied certain conclusions of law.

The Fidelity Trust Company filed no answer and a decree pro confesso was entered.

CONCLUSIONS OF LAW.

The agreement between Wetherill & Company and The Downing Paper Company established a bailment, and under its terms the title to the boilers remained in the bailors: Edwards's App., 105 Pa. 103.

Where personal property is attached to land for purposes of trade, the intention of the parties is the determining factor in ascertaining whether it is a fixture and part of the realty: Hill v. Sewald, 53 Pa. 271.

In the agreement made by Wetherill & Company they were authorized to terminate the lease and take possession of the boilers, if the paper company failed to comply with its terms.

While between the landlord and tenant of the land it might appear inequitable to permit the latter to remove the boilers in question before provision is made for the restoration of those formerly on the premises, which they took out, and requiring payment of the rent in arrear for the building, the complainants do not claim the boilers under any of the terms of the lease made by Gallagher to the paper company, but as owners' title of the bailee having been terminated.

There was no provision in the lease of the building providing that the property of the tenant should be forfeited for noncompliance with the terms of the lease: Wick v. Bredin, 189 Pa. 83 ; nor was there any provision which would entitle the landlord to hold Wetherill & Company or their property liable for breaches of covenant by the tenant.

The boilers were placed upon the premises as trade fixtures and complainant should be permitted to remove them: Lemar v. Miles, 4 Watts, 330, and should be required to close up the wall and restore the building to its present condition without expense to the landlord.

Under the prayer for general relief, compensation is claimed for deterioration in the value of the boilers since the date when complainants made demand for them. Gallagher, the landlord, held the property as trustee and was advised by counsel to retain possession of the boilers. Complainants received the sum of $1,000 at the beginning of the bailment, which was to be applied to the purchase if the agreement had been consummated, but the diminution in the value of the boilers is a much smaller sum. This claim is not allowed.

The prayers of the bill of complaint praying that the boilers be delivered to complainants are granted.

*Error assigned* was the decree of the court.

*E. O. Michener,* for appellants.—When articles have been put up in substitution of others which were attached to the premises at the time of the demise, the tenant, on taking down his own fixtures, is bound to restore the former or to replace them by another erection of a similar description : Penna. Globe Gas Light Co. v. Gordon, 18 Montg. 189; Whiting v. Brastow, 21 Mass. 310.

The plaintiff had no right to remove the boilers without paying or tendering the rent due and restoring the property to its original condition.

*Edward Brooks, Jr.,* with him *Frederick J. Geiger* and *Edgar Dudley Faries,* for appellees.—As between the Wetherills and the paper company, the boilers in question were personalty, and the fact that they were affixed to the realty could not change their character, or deprive the Wetherills of their right of property : Hall Mfg. Co. v. Hazlett, 11 Ontario App. 749.

The goods of a stranger cannot be followed and distrained : Adams v. LaComb, 1 Dallas, 440; Sleeper v. Parrish, 7 Phila. 247.

It is not now denied by the appellants that the lease of the boilers to The Downing Paper Company was a bailment and not a conditional sale, and the following authorities are conclusive on this point : Rieker v. Koechling, 4 Pa. Superior Ct. 286; Stiles v. Seaton, 200 Pa. 114; Edwards's Appeal, 105 Pa. 103; Potter v. Stetson, 11 Pa. Superior Ct. 627; Lippincott v. Scott, 198 Pa. 283.

OPINION BY MR. JUSTICE MESTREZAT, April 22, 1907:

Notwithstanding the numerous assignments of error and the very elaborate brief of the learned counsel for the appellant, he has discussed the law involved in the case under two heads. The trial judge has found and stated the material facts in his adjudication, and on those facts the decree may well be affirmed.

1. Under all our authorities, the contract between the plaintiffs and The Downing Paper Company was a bailment of the boilers and they continued to be the personal property of the plaintiffs. They were trade fixtures and such as a tenant may remove during the continuance of his term : Hey v. Bruner, 61 Pa. 87. On failure to comply with any of the covenants of the bailment, it was stipulated that the plaintiffs, who were the bailors, should have " the right to declare this lease void . . . . and to take immediate possession of said property wherever they may find the same." The paper company, the bailee, failed to pay the stipulated rent for the boilers as it became due, and on June 20, 1904, the plaintiffs exercised their right to declare the termination of the lease and take possession of the property. One month prior to this date, the paper company was adjudged a bankrupt and the plaintiffs' property was then in the possession of the receiver. A few days after the bailment had been terminated, the receiver directed the watchman on the premises to admit the plaintiffs for the purpose of removing the boilers. On the same day Gallagher, the paper company's lessor of the premises, notified the plaintiffs " that the boilers were obtained by The Downing Paper Company for the purpose of replacing other boilers which were part of the building rented to them as a whole, and claiming that the new boilers were part of the real estate, and stating that he would retain the boilers." The defendants' first contention is that the plaintiffs had no right to remove their boilers without replacing the old boilers in the place they originally occupied in the manufacturing plant. The paper company secured the new boilers because it desired and needed additional steam-producing capacity for its paper manufacturing plant. The plaintiffs had nothing whatever to do with removing the old boilers. This was done by the paper company which removed them to an adjoining lot on the same premises. Neither did the plaintiffs erect their boilers in the paper manufactory. It is true they supervised the location of them, but the paper company built the sub-foundation, provided the building to inclose them, and erected the boilers on the foundation. Why, then, should the plaintiffs replace the old boilers in the manufacturing plant ? They did not remove them, nor did they receive them as part payment for the

new boilers. They committed no waste of the premises nor did they do any injury to the premises as they did not detach and remove the old boilers. In a word, they had nothing to do with the old boilers or with removing them from the manufacturing plant. Under the circumstances, therefore, the plaintiffs were not required to restore the old boilers to their former place in the plant, before they could annul the lease with the paper company and resume possession of the new boilers, the title to which remained in them.

2. The other contention of the appellants is that the plaintiffs had no right to remove their boilers without paying the rent and restoring the property to its original condition. The learned judge correctly found that " the (new) boilers can be removed by opening the wall of the building in which they are set," and in the decree, the court has directed " that the said complainants be required to restore any portion of the premises which may be affected by the removal of the said boilers to its present condition." Of this contention, therefore, the remaining cause of complaint is that before retaking their property the plaintiffs should have paid' the arrears of rent. But as we have held the paper company held this property as bailee, and the bailment was, for sufficient cause and within its terms, declared by the plaintiffs at an end on June 20, 1904. The premises were then in the hands of a receiver in bankruptcy who properly conceded the title to be in the plaintiffs and also their right to remove the property. At that time there was $1,000 of rent in arrear, but the landlord had not distrained and hence the tenant could have removed his personal property from the premises and it would not then have been subject to distress, unless fraudulently removed. It is, however, different with the property of a stranger which may be distrained while on the demised premises, but cannot under any circumstances be followed and made subject to payment of arrears of rent. Here, there was no privity between the landlord of the premises and the plaintiffs and, after the annulment of the bailment, the boilers were the property of a stranger who could remove them, unless a distress had previously been levied for the rent. In order to subject personal property to the payment of rent due for the demised premises, the landlord may distrain the property, or where the property

of the tenant has been taken in execution or has been assigned for the benefit of creditors, the landlord is, under present legislation, entitled to be paid one year's rent out of the proceeds of sale. Neither of these conditions existed here at the time the plaintiffs declared the termination of the lease and were entitled to the possession of their property. If the paper company had then been in possession, it could have been compelled to deliver the property to the plaintiffs. As it was, the property was in custodia legis, and the receiver became the trustee of the plaintiffs and held the property for them. It was then beyond the grasp of the landlord of the premises, and he could not follow and subject it by legal process to the payment of his rent.

We fail to see that the plaintiffs have done or are doing anything inequitable in this litigation. They are simply insisting upon their rights under the contract with the paper company. The property in controversy belongs to them and neither the paper company nor the landlord of the demised premises has title to it or the right to retain it. The plaintiffs did not get the old boilers nor the value of them, and are not responsible, either in law or equity, if the paper company removed and disposed of them. That is a matter between the owner of the premises and his lessee, the paper company, and with which the plaintiffs have no concern. The latter have done equity and, therefore, have a right to ask equity.

We think that, under the undisputed facts of the case, the learned trial judge reached the proper conclusion, and, therefore, the decree of the court below is affirmed.