Derbyshire Brothers *v.* McManamy et al., Appellants.

. Argued October 14, 1930.

Before TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM, BALDRIGE and WHITMORE, JJ.

*Jacob Weinstein,* for appellants.

*Thomas E. Cogan* of *Cogan and Bramhall,* for appellees.

OPINION BY KELLER, J., January 30, 1931:

On February 4, 1929 Derbyshire Brothers issued a writ of replevin against Rex K. McManamy to recover certain furniture which they had supplied him under a bailment lease. In the affidavit filed with the praecipe the value was fixed at $250. The sheriff replevied the goods in the possession of Bernard L. Shapiro, McManamy's landlord, and Edward E. Abrams, his bailiff, summoned them as additional defendants and delivered the property to the plaintiffs. On March 1, 1929 the added defendants, (hereinafter called the defendants—McManamy was not served), ruled the plaintiffs to file their statement of claim. On March 15th the statement of claim was filed and notice to file an affidavit of defense served on defendants' coun-

sel. On March 17th defendants' counsel was compelled to go to a hospital to undergo a surgical operation, and the next day (twelve days before there could be any default) some one on his behalf notified plaintiffs' counsel and requested indulgence in the way of filing an affidavit of defense until he was able to return to his office; and on March 21st plaintiffs' attorney wrote him agreeing to extend the time as requested. On May 13th defendants' counsel left the hospital and on May 20th he filed and served on plaintiffs' counsel his affidavit of defense and notice to file a reply, as required by the Rules of Court of Philadelphia County (See Katz v. Wagoner, 92 Pa. Superior Ct. 363). On May 31st plaintiffs' counsel wrote that the reply if not filed the following Monday would be filed in the very near future without any further delay. On July 22d defendants' counsel called attention to the long delay and asked that the plaintiffs' reply be filed within two weeks. On August 2d plaintiffs' counsel asked for a further extension and on August 14th wrote again for further indulgence, stating he would endeavor to have the reply filed in the near future. On September 17th defendants' counsel notified plaintiffs' counsel that his reply must be filed by the 24th inst. On October 1st plaintiffs' counsel wrote that owing to the sickness and death of his father (which had occurred on September 16th) he had not been able to file the reply, but would endeavor to do so within the next week or ten days. Defendants' counsel thereupon wrote him on October 2d stating that he would no longer be trifled with or imposed upon and would not grant any further indulgence and warned him that failure to file his reply forthwith would be at his peril; and no reply having been filed by October 9th, on that day he caused judgment to be entered against the plaintiffs in favor of the added or intervening defendants for want of a reply, and on October 19th a writ of inquiry to assess

the damages issued. On October 31st a rule to strike off the judgment was entered, with stay of proceedings, and on November 7th a petition to open the judgment was filed which was accomplished by an unexecuted and unsworn reply which it was proposed to file if the judgment was opened, on which a rule was granted, with stay of proceedings. The rule to strike off the judgment was discharged; the rule to open, made absolute. The added or intervening defendants have appealed.

We have gone into the details of the respective indulgences and the default in filing the plaintiffs' reply somewhat fully, for from them it is apparent that defendants' counsel had good ground for complaining that his forbearance had been taken advantage of. It is true that the plaintiffs' counsel had indulged him in the matter of filing an affidavit of defense; but the request was made long before there was any default and at a time when, and on grounds that, the court would certainly have extended the time had plaintiffs' counsel refused the courtesy, and the courtesy thus granted could not be used as an excuse for an indefinite failure to file a simple reply. Within one week after defendants' counsel was out of the hospital, his affidavit of defense had been filed and served; but letter after letter proved unavailing to move plaintiffs' counsel either to prepare a reply himself, or take the time to examine a reply which his partner had prepared in May. His father's death on September 16th and burial on September 20th, were valid excuses for his not attending to legal business during that period, but his law office was open and attending to business from May 20th to September 16th and from September 20th to October 9th; he had a partner who had worked on this case; he himself is not shown to have been incapacitated or prevented from attending to his law practice during those periods, and he has not presented

the shadow of a legal excuse for his failure to file a reply before October 9th. Whatever return indulgence he had earned by his extension of time to defendants' counsel had long since been exhausted and the debt was by this time all the other way. In the face of the peremptory demands of September 17th and October 2d, he had no right to rely on the defendants' counsel's further indulgence and forbearance. As was well said by Judge HENDERSON, speaking for this court in Logan's Est., 74 Pa. Superior Ct. 82, 86, "The exercise of generosity does not create a binding obligation for its continuance." There comes a time when in the interests of justice and his client's cause further forbearance may properly be refused by an attorney if satisfied that his courtesy is being taken advantage of for purposes of procrastination and delay, and we agree with counsel for appellants that that time had come in this case. No valid excuse for such long continued delay in the face of repeated requests and demands for action was shown and we are of opinion that the judgment should not have been opened. See Hale v. Uhl, 293 Pa. 454.

We are less hesitant in so holding because we are of opinion that the reply appended to plaintiffs' petition to open the judgment fails to present a valid defense as against the defendants' claim for rent; and it follows that if, although filed in time, the reply would have been insufficient to prevent judgment, then the judgment by default should not be opened. The depositions in support of the rule are of value only in substantiating the averments of the petition and reply, and furnishing occasion for considering the reply.

In the affidavit of defense filed it was alleged that McManamy was tenant of an apartment owned by the defendant, Shapiro, under a written lease dated October 25, 1927, at a rental of $85 a month; that on

January 31, 1929 he abandoned and vacated the premises, owing $470 rent (duly itemized) and leaving in the apartment the goods claimed by plaintiffs; that the said goods were subject to distress for the rent in arrears; and that being so subject he and his bailiff, Abrams, distrained upon and duly took possession of the said goods as and for a distress for the rent in arrears due and owing him, Shapiro, whereby he claimed a lien upon said goods in the sum of $470 for rent and $41.50 legal costs and the right of possession until the same were paid.

The plaintiffs' reply averred that the goods had been leased by them to McManamy; that the latter had not lived up to the conditions of his lease and that with his consent one of the plaintiffs had called at the leased premises for the purpose of taking the said goods and had then and there (January 31st was proved to be the date) orally demanded of the defendant, Shapiro, that he permit the said plaintiff to take said goods away from said premises, "which the said Bernard L. Shapiro refused to do, averring that the defendant, Rex K. McManamy was in arrears in the rent on his apartment, and that he, the said Bernard L. Shapiro, was going to levy upon all the furniture in said apartment." The reply admitted that after demand made by the plaintiff as aforesaid a formal levy was made by Abrams as bailiff for Shapiro on January 31st as a distress for rent, but denied their right so to distrain because they had knowledge that the goods belonged to the plaintiffs and not to McManamy, the plaintiffs having notified the defendant Shapiro on January 30th that the goods in the possession of McManamy were not his property but the property of the plaintiffs. The depositions showed that this notice was sent by mail and not received until February 1st, but it is wholly immaterial, for a landlord has a right to distrain for rent on goods belong-

ing to third parties in the possession of his tenant while on the leased premises: Myers v. Esery, 134 Pa. 177; May, Stern & Co. v. Lintner, 67 Pa. Superior Ct. 422; Pickering Co. v. Lutz, 67 Pa. Superior Ct. 479, 482. None of the articles replevied had been exempted by statute from distress for rent, on notice to the landlord, but even if they had been, it was not alleged or shown that any notice of the ownership of the leased goods had been given the landlord when they were put in the apartment, or at a time when no rent was due, which is a necessary prerequisite: McGeary v. Mellor, 87 Pa. 461, 464.

The question at issue is whether the refusal of the defendant Shapiro to permit the plaintiffs to remove their goods, because the tenant, who had abandoned the premises, was in arrears for his rent, with the statement that he was going to levy upon all the furniture in the apartment, followed the same day by the formal levy in distress referred to in the affidavit of defense, made the plaintiffs' goods in the leased apartment subject to the defendant landlord's claim for rent, or so much thereof as was covered by the value of the goods? Or whether the plaintiffs were entitled to take them away free of the landlord's claim for rent?

The same question, practically on all points, appears in the English Reports, and while the law on the subject in the two jurisdictions is not the same in all respects, because our Act of 1772 (1 Sm. L. 375) departed from the common law and permitted a *sale* of the distrained goods, nevertheless the right in this State is derived from the common law of England and the decisions of the courts of that country as to what constitutes a levy in distress for rent are entitled to great weight.

In Wood v. Nunn, 5 Bingham 10, E. C. L. R. Vol. 15, the defendant, a landlord, to whom rent was in

arrears, hearing that a machine was about to be removed, entered the premises and laying hands on the machine, said, in the presence of the tenant and the plaintiff, who claimed property in the machine, "I will not suffer this or any of the things to go off the premises till my rent is paid." The plaintiff, however, carried the machine off and the defendant afterwards seized it. On the same day, after the removal the landlord defendant sent his bailiff to distrain for the rent. It was held that the distress was sufficiently commenced to entitle the defendant to the article in question, BEST, C. J., saying, "The distress commenced when the landlord came on the premises and said, 'This shall not go till my rent is paid'." The colloquy in the present case between Derbyshire and Shapiro took place in the leased apartment, where the latter had gone in the morning, as soon as he heard of Mc-Manamy's vacating the premises during the night before.

In Cramer v. Mott, L. R. 5 Q. B. 357 (1870), W. occupied lodgings in the defendant's house at a weekly rent. He brought a piano with him, which he had hired of the plaintiffs. The plaintiffs sent two men to fetch away the piano; the defendant's wife met the men in the passage of the house outside the room in which the piano was, and having been informed of their object, said in the presence of W., who was at the door of the room, that the piano should not leave the house unless what was due and owing from W. for rent and board was paid. This occurred on January 16, 1869 and again on January 19, 1869. There was no formal distress until January 20, 1869. The wife was acting by the defendant's authority and there was rent due from W. The plaintiffs on January 21, 1869 brought an action for the conversion of the piano, and the defendant justified the detention as a distress. The judge told the jury that if they be-

lieved defendant had detained the piano for the rent in arrears, that amounted to a distress without actual seizure; and they ought to find for defendant. Held, that there might be a distress without actual seizure and that what occurred amounted to a distress.

The Chief Justice, Lord COCKBURN, said: "I think that there need not be an actual seizure to create a distress; it is enough that the landlord or his agent takes effectual means to prevent the removal of the article from off the premises, on the ground of rent being in arrears; and he does this when he declares that the article shall not be removed till the rent is paid."

These cases were cited by the appellees in Furbush v. Chappell et al., 105 Pa. 187, where Furbush, who claimed to own a machine which was on premises leased by Fisher to Chappell and Taylor, with the consent of the tenants attempted to remove it from the building and before they had done so, Fisher, the landlord, came to the mill and threatened to arrest the workmen, giving as a reason that the tenants owed him some rent. According to plaintiff's witness, Fisher did not state the amount of the rent; according to Fisher he said there was five months' rent due, but it did not appear that he stated the amount of rent due. In consequence of Fisher's threats Furbush's workmen desisted from the attempt to take the machine and left the mill. The tenants then locked up the mill and gave the key to Fisher, who said that he had possession and that the machine could not go until the rent was paid. Furbush brought this action of replevin. Fisher afterwards went to the mill with a constable to distrain upon the machine, but found that the sheriff had seized the machine under the writ of replevin. The court instructed the jury to find a verdict for the defendants and to assess the damages at the rent in arrear; and the Supreme Court affirmed,

saying: "A landlord may verbally distrain for the non-payment of rent, and he may, by parol, authorize a bailiff to distrain. As a general rule, to render the distress complete, there must be a seizure of the property distrained upon; but a very slight act is sufficient to constitute a seizure in contemplation of law. It need not be an actual seizure of the particular goods. If the landlord gives notice of his claim for rent, and declares the goods which he names shall not be removed from the premises until the rent is paid, it is a sufficient seizure."

This is in accord with the English authorities cited and in our opinion rules this case in favor of the defendants. See also Strawbridge & Clothier v. Stiffler, 100 Pa. Superior Ct. 285, where the defendant landlord refused to allow a piano to be removed by a bailor of his tenant until the rent was paid, and we sustained his right to do so as a distraint for rent; and also Pickering v. Breen, 31 Pa. Superior Ct. 280.

The authorities relied on by appellee and cited by the learned court below have all been examined by us, but are distinguishable from this case.

The extract from Jackson & Gross on Landlord and Tenant, p. 764, section 1423, means only that if a stranger whose goods are on the demised premises gets them off the premises before the landlord has distrained upon them, they are not liable to be followed nor subject to distress by the landlord; which is unquestionably the law. The authorities cited by the text book writer, (Adams v. LaComb, 1 Dall. 440; Sleeper v. Parrish, 7 Phila. 247; Scott v. McEwen, 2 Phila. 126), so hold, as does also Walsh v. Phila. Bourse, 32 Pa. Superior Ct. 348. In Wetherill v. Gallagher, 217 Pa. 635, the boilers were permanently affixed to the realty and not subject to distraint. To same effect, see last paragraph of opinion in Farbush v. Chappell, supra, p. 190.

Holding as we do that the act of the defendant Shapiro in refusing to allow the plaintiffs' furniture to be removed from the premises because the tenant was in arrears in the rent on the apartment, and stating that he was going to levy upon all the furniture in the apartment, as averred in the plaintiffs' reply, amounted to a seizure in contemplation of law, it was the preliminary step or commencement of a valid distress for rent, and when followed, as it was by a formal distress warrant, it was a sufficient justification for a refusal to deliver up the furniture unless or until the rent was paid and impressed the property with a lien for the rent in arrear and costs.

As, however, the affidavit of value fixed the value of the goods at $250 and there was no averment in the affidavit of defense that they were worth more than that amount, if the defendant chooses to take judgment by default for want of a plaintiffs' reply, his damages cannot be assessed in excess of that sum. He cannot recover for rent in excess of the value of the goods replevied.

The assignment of error is sustained, and the order opening the judgment is reversed.