Moxham Investment Corp. *v.* Thomas-Kinzey Lumber Co. et al.

Argued November 9, 1931.

Before TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM, BALDRIGE and STADTFELD, JJ.

*Walter E. Glass* and with him *Wm. Williams,* for appellant.

*Edward J. Harkins* of *Scanlon & Harkins,* and with him *Herbert W. Hahn,* for appellee.

OPINION BY CUNNINGHAM, J., March 5, 1932.

These appeals are from judgments in favor of the plaintiff, Moxham Investment Corporation, in two actions of replevin, tried together in the court below. The same and only the same question is involved in each appeal. It is whether, under all the evidence, Thomas-Kinzey Lumber Company, one of the defendants (a landlord acting through its bailiff, John Woodchuck, the other defendant), could legally seize as a distress for arrears of rent certain automobiles in

which plaintiff claimed ownership and immediate and exclusive right of possession.

Mitrey G. George was an automobile dealer, doing business in the City of Johnstown, under the name of Johnstown Auburn Company, on premises 500-504 Horner Street, owned by Thomas-Kinzey Lumber Company and leased to him by a writing dated May 31, 1927, at a rental of $250 per month. By November, 1929, his arrearages of rent amounted to $2,380.64 and on November 18th the Thomas-Kinzey Lumber Company issued a landlord's warrant to John Woodchuck, a constable, authorizing and empowering him to collect that amount by distraining the goods and chattels on the demised premises. Pursuant to the warrant, Woodchuck seized, inter alia, ten automobiles, hereinafter described, and posted the requisite notice. On November 21, 1929, plaintiff, Moxham Investment Corporation, replevied two of them at No. 714, December Term, 1929, of the court below, and eight at No. 715 of the same term; the sheriff delivered the cars to plaintiff under its bond; their admitted value, $4,220, was in excess of the claim for rent.

The cases came to trial May 15, 1930, before President Judge EVANS and a jury. At the conclusion of the testimony, the trial judge, being of opinion that no material facts were in dispute and that under the uncontroverted facts plaintiff's case was doubtful, directed verdicts in favor of the Thomas-Kinzey Lumber Company, the defendant landlord, for the amount of its rent claim and costs. Plaintiff thereupon filed its motions (based upon the refusal of its points for binding instructions) for judgments in its favor n. o. v. and also motions for a new trial. The motions were argued before the court, in banc, and on August 3, 1931, for the reasons stated in an opinion filed by the trial judge for the court, plaintiff's motions for judgments in its favor n. o. v. were granted and we now have these

appeals by the defendant landlord from those judgments. Upon examination of the evidence, we agree with the court below that no material fact was controverted.

The circumstances out of which the questions of law arose may be thus epitomized: The cars in question were one Flint coach, engine No. 10,121, and one Auburn sedan, engine No. 10,772, replevied at No. 714; one Willys-Knight brougham, engine No. 174,906, two Auburn roadsters, engine Nos. 5,438 and 17,975, one Auburn brougham, engine No. 3,912, three Auburn sedans, engine Nos. 5,764, 1,603 and 5,359, and one Buick touring car, engine No. 1,298,178, replevied at No. 715. George, doing business as Johnstown Auburn Company, the tenant in the case, was the dealer in the transactions hereinafter referred to and Moxham Investment Corporation, the claimant of the cars, was engaged in the business of financing the sale of new and used automobiles.

The material facts may be set forth by using, as typical of the other nine instances, those relative to the handling of the Buick. By a bailment lease, dated July 22, 1929, George leased the Buick to Daniel L. Gephart for a term of twelve months at a monthly rental of $30, with an option to Gephart to purchase it, within ten days from the expiration of the term, for one dollar, provided he complied fully with the provisions of the lease. A judgment note for $360, the aggregate of the rentals, was executed and delivered the same day by Gephart to George as additional security for payment of the rentals; the note and bailment lease were both assigned by George to the plaintiff finance company on the day of their execution and George guaranteed to it the making of the specified payments. The lease provided that it should be binding upon and inure to the benefit of "the lessor, his or its heirs, successors and assigns." Among other

provisions contained therein was the following: "Upon any default in payment of any installments of rental or upon breach of any condition or covenant herein made by the lessee, the lessee shall, on demand of the lessor, forthwith deliver the machine in as good condition as when received by the lessee (ordinary wear and tear excepted) to lessor, and should lessee fail or refuse to deliver the machine as aforesaid, the lessor shall have the right, without notice or demand, to terminate this lease and to take possession of the machine wherever found, and the lessee hereby authorizes lessor to enter the premises of the lessee, with or without force or process of law, and forthwith take possession of machine."

A certificate of title was issued in the name of Gephart (showing an incumbrance in favor of plaintiff in the amount of $360) and delivered to plaintiff. The other nine cars were leased by George, under the same conditions, to their respective lessees and the leases and notes assigned and guaranteed by him to plaintiff. Gephart and the other lessees defaulted in the payment of the stipulated rentals; the defaults occurred at different dates, but all prior to November, 1929. As the defaults occurred from time to time, the finance company, as assignee of the leases and notes, exercised its right under the above quoted provision of the leases to terminate them, and, through its general manager and other employes, took possession of each of the ten cars. At that time it had no garage of its own and the cars, as repossessed, were placed by plaintiff in the garage operated by George, because, as stated by plaintiff's general manager, "George was the guarantor in the first place and in the second place they were taken there for reservicing, reconditioning and putting them on the market for sale." It may, therefore, be observed that plaintiff was clearly the owner of the cars at this time, and, by arrangement with George,

had placed them in his garage. As we view the case, the automobiles were then the goods of a stranger upon the demised premises and the case necessarily turned upon the question whether the finance company, as owner, exercised its right to take possession and whether it removed them from the premises to the extent that they became immune from the landlord's distress. Upon this question, the evidence was that George seemed to be unable to render the services required by plaintiff in preparing the cars for the market.

On November 15, 1929, plaintiff rented a garage of its own on Cypress Avenue, some distance from the George garage, with the intention of there storing its repossessed cars. At that time it had approximately twenty-five cars in the George garage. On Sunday morning, November 17th, the finance company, through its employes, took these cars out of George's garage, placed them upon the street and began towing them "as fast as they could" to its own garage on Cypress Avenue. Many of them were out of repair to such an extent they had to be towed. After the cars had been removed to the highway the door was closed and locked. Fifteen had been taken away, when Frank B. Kinzey and George came upon the scene and, under their joint direction, the cars in suit were taken from the highway and placed back in the George garage by George's employes. The landlord's warrant was issued the next day and the cars formally distrained; the finance company replevied on the 21st. The lease for the premises contained the usual provision that "any removal or attempt at removal of any goods or chattels from the premises by the lessee," while rent is unpaid, " shall be deemed a fraudulent and clandestine removal," authorizing the landlord to follow and seize them within thirty days. But the provision does not apply to the goods of a stranger (16 R. C. L., sec. 541, p. 1020) and the removal here was not by the tenant.

"If a stranger, whose goods are on the demised premises, gets them off the premises before the landlord has distrained upon them, they are not liable to be followed nor subject to distress by the landlord": Derbyshire Bros. v. McManamy et al., 101 Pa. Superior Ct. 514.

Aside from the fact that the day upon which the landlord undertook to replace the cars on the demised premises was Sunday, there was no evidence (cf. Derbyshire Bros. v. McManamy et al., supra) from which it could be concluded the landlord attempted to distrain that day. Counsel for the landlord expressly disavow, in their brief, that such attempt was made and say the landlord "bases no claim to hold the automobiles involved in these cases upon anything transpiring on Sunday." They contend, however, that plaintiff could not lawfully take possession of the cars on Sunday. But plaintiff's actions in replevin were not based upon an executory contract made on Sunday and the landlord was not a party to the arrangement under which the cars were placed in the George garage. It may have subjected itself to the statutory penalty provided in the Act of April 22, 1794, 3 Sm. L. 177, for engaging in "worldly employment or business" on Sunday, but, in so far as these cases are concerned, it merely consummated its agreement with George by taking physical possession of its personal property. See Chestnut v. Harbaugh et al., 78 Pa. 473; Smyers v. McMahon, 71 Pa. Superior Ct. 142. Plaintiff is not seeking the aid of the law to enforce a contract made in violation of the prohibition of the statute.

Upon the whole, we here have cases in which plaintiff, the owner of goods upon demised premises and entitled to their immediate possession, took physical possession of them and removed them to the public highway; while there they were not subject to distress for rent due the landlord of the premises: Pickering

v. Breen, 22 Pa. Superior Ct. 4; Walsh v. Philadelphia Bourse, 32 Pa. Superior Ct. 348. Neither the tenant nor the landlord had any legal right to meddle with plaintiff's property while so placed. To permit a landlord to follow and seize the property of a stranger, as did the landlord in these cases, would be to confer an additional remedy for the collection of arrears of rent to which a landlord is not entitled under our law.

Our conclusion, therefore, is that the judgments entered by the court below, under which the finance company retains possession of its cars, are in accordance with the law as applied to the facts in these cases.

Under this disposition of the appeals, we need not consider the matters urged in support of the motions for a new trial.

The judgments are severally affirmed.