Boyle *v.* Coleraine Colliery Company, Appellant.

Argued April 15, 1936.  Before KEPHART, C. J., SCHAF-
FER, DREW, LINN, STERN and BARNES, JJ.

Nochem S. Winnet, with him Ralph T. Lynch and Ralph W. Rymer, for appellant.

G. John Bruger, with him F. S. Riordan, for appellee.

OPINION BY MR. JUSTICE STERN, June 26, 1936:

On February 10, 1930, defendant leased to J. P. Flanagan and Company "that certain breaker with the appurtenances, such as sufficient ground on which to dump culm, silt and rock, situate in the town of Junedale, County of Carbon, State of Pennsylvania, known as the Coleraine Breaker, together with the right of ingress, egress and regress for the term and period of one year," and the rental was a certain designated sum per ton on all coal prepared through the breaker, with a stipulated minimum. The lessee agreed to deposit all waste materials only in such places as directed by lessor. The lease contained a clause that personal property removed from the premises should be liable to distress for thirty days after such removal.

On the same day defendant, by letter to J. P. Flanagan & Company, gave them the right to run through the breaker the culm banks of defendant with the exception of the "spoiled bank," payment to be at a certain rate per ton finished product. On February 17, 1930, by letter to J. P. Flanagan & Company, defendant "leased" to the latter the "spoiled bank" on the basis of a certain royalty per ton finished coal going through the breaker, this letter to be supplementary to the general lease and to be covered by the same conditions.

On May 27, 1930, the lease was assigned by J. P. Flanagan & Company to plaintiff, who, in June, 1930, orally, and on or about September 9, 1930, in writing,

assigned it to Junedale Coal Company. These assignments were admittedly valid in all respects. In December, 1930, there was a default in payment of the rent and royalties due under the lease, and on February 10, 1931, defendant issued a landlord's warrant under which the constable distrained on certain personal property belonging to plaintiff, which the latter thereupon replevied and which is the subject-matter of the present suit.

The property in question consisted of three locomotives, twelve dump cars, and certain rails and ties, all of which had been used in connection with the operation of the culm banks since March, 1930. When seized in distraint the locomotives and dump cars were on defendant's land, 300 to 400 feet north of the breaker, and the rails and ties were on the spoil bank northeast of the breaker. Statement of claim and affidavit of defense having been filed, the case was submitted to the court sitting without a jury on an agreed statement of the facts as above summarized. The court rendered judgment in favor of plaintiff on the ground that the chattels in question were not upon the demised premises at the time of the distraint.

The judgment must be affirmed. At the outset it is to be noted that the right given in the lease to pursue for a period of thirty days goods removed from the premises does not apply to the situation here presented, because such a provision cannot be made to cover the property of a stranger: *Moxham Investment Corporation v. Thomas-Kinzey Lumber Co.,* 104 Pa. Superior Ct. 294, 299; *Wetherill v. Gallagher,* 217 Pa. 635, 642. Here plaintiff was a "stranger" at the time when the distress was made. He had been an intermediate assignee of the lease, but after its transfer to Junedale Coal Company he was not in any privity with defendant either contractually or by virtue of possession of the demised premises, and was not responsible for any rent accruing after the lease had been assigned by him:

*Goss v. Woodland Fire Brick Company,* 4 Pa. Superior Ct. 167, 173.

Since a distress is legally effective only when made on goods found on the demised premises, the real question in the case is whether the places where the locomotives and cars and the rails and ties were found were within the limits of the leased property. Defendant contends that since the lease was of the breaker with the *appurtenances,* it should be construed to include land surrounding the breaker to the extent of at least the three to four hundred feet necessary to stretch to the point where the locomotive and cars were seized. Defendant also stresses the fact that Junedale Coal Co. used the office of defendant which was situated about 1,500 feet north of the breaker and therefore about 1,000 feet beyond the point where the locomotives and cars were distrained upon. Apart, however, from the fact that it has been held from earliest times that, as a general rule, land cannot pass as appurtenant to other land *(Hill v. West,* 4 Yeates 142, 155; *Crawford v. Neff,* 3 Walker 57, 61), the phrase "such as sufficient ground on which to dump culm, silt and rock" is evidently used as illustrative of the kind of "appurtenances" referred to in the lease, and is a grant not so much of the ground itself as of an incorporeal right to dump waste material at places which, as provided in another clause of the lease, should be only where directed by lessor. Moreover, the very fact that there is granted *"sufficient* ground on which to dump culm," etc., negatives the contention that the entire ground of defendant adjacent to the breaker was intended to pass under the demise. The facts do not indicate that the locomotives and cars were found at any of the places where the waste was dumped, and while it may be true that the lease of the breaker carried with it at least so much of the ground immediately surrounding as was necessary to its support, there is nothing to warrant the conclusion that defendant's land 300 to 400 feet

from the breaker was intended to pass as a part of the demised premises. Even if the locomotive and cars being used to carry culm to the breaker were operated over a right of way which might be implied from the lease of the culm banks and were on such right of way when distrained upon, they would not be upon the demised premises so as to make them a proper subject of distraint, because a right of way is merely an incorporeal hereditament and not a physical part of the premises. Thus in *Capel v. Buszard,* 6 Bingham 150, decided more than a century ago, there was a demise of a wharf on the River Thames, together with "all appurtenances" thereunto belonging, and it was held that while the lease thereby granted the exclusive use of the land in front of the wharf between high and low watermark, whether covered with water or dry, nevertheless the lessor could not distrain on a barge, the property of a stranger, found lying in the space between high and low watermark and attached to the wharf by ropes, the court holding that a distress could not be made upon property found upon land which was not a part of the demise but over which the tenant had merely an easement. In line with this authority are such cases in our own State as *Pickering v. Breen,* 22 Pa. Superior Ct. 4, and *Moxham Investment Corporation v. Thomas-Kinzey Lumber Co.,* 104 Pa. Superior Ct. 294, 300, where it was held that a distress could not be made upon goods on the sidewalk in front of the demised premises, and *Walsh v. Philadelphia Bourse,* 32 Pa. Superior Ct., 348, 352, where the same principle was applied to stairways, elevators and halls in an office building, which the tenant had a right to use.

As far as the occupation by Junedale Coal Company of defendant's office is concerned, there is nothing in the statement of facts to disclose whether such occupation was merely by sufferance or whether it was considered by the parties as a right granted by the lease; but even in the latter event no inference would reason-

ably arise that all the land between the breaker and the office passed under the lease as part of the demised premises.

In regard to the rails and ties found on the culm banks, these also were not located on the demised premises. The rights granted in regard to these banks by the letters of February 10 and February 17, 1930, while purporting to be a "lease," constituted, in legal effect, under well established authorities, a sale of the culm in place to the extent removed by the grantee during the term, and the relationship between the parties as to such culm banks was therefore not that of lessor and lessee: *Tiley v. Moyers*, 43 Pa. 404, 410; *Robinson v. Pierce*, 278 Pa. 372, 375; *Sturdevant v. Thomson*, 280 Pa. 233, 236.

Judgment affirmed.