# Riddlesburg Coal and Iron Co's. Appeal, Cambria Iron Co's. Appeal, Huntingdon and Broad Top Railroad Co's. Appeal.

1. Under the Act of April 9th, 1872, and its supplement of June 12th, 1878, the claims for wages of mechanics, laborers and others, employed in or about mines, manufactories or other business, are preferred to claims for rent of any of said mines, manufactories or other real estate held under lease, where the lessee or lessees are the parties employing the said mechanics, laborers and others.

2. The notice of the value and amount of the claim for wages required by said supplement of June 12th, 1878, to be given to the landlord or his bailiff is properly given to the sheriff in case of a sheriff's sale.

3. Where a landlord receives accepted drafts as satisfaction of rent and gives receipts acknowledging the payment of said rent he loses his right, under the Act of June 16th, 1836, to be preferred in his claim even if said drafts were never paid.

4. Labor claims for wages under the Act of April 9th, 1872, and its supplement of June 12th, 1878, may be sold and assigned, and the assignees are thus invested with all the rights the labor claimants themselves would have had if their respective claims had not been so sold and assigned.

May 13th, 1886.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

These were three appeals : the first on part of The Riddlesburg Coal and Iron Company, the second on part of the Cambria Iron Co. and the third on part of the Huntingdon and Broad Top Railroad Company from the decree of the Court of Common Pleas of Bedford county, confirming the report of the Auditor appointed by said court to make distribution of the money arising from the sale by the sheriff of said county, by virtue of a writ of *fieri facias* issued out of said court, of the personal property of the Kemble Coal and Iron Company. The Auditor awarded the fund to the Union Bank of Huntingdon and the Bedford County Bank, the appellees, to the exclusion of the appellants.

On the 8th day of August, A. D. 1884, Nimick & Co. obtained judgment against the Kemble Coal and Iron Company for $132,734.84 in the Court of Common Pleas of Bedford county. Upon that judgment a writ of *fieri facias* was issued to No. 121 of September term, 1884, by virtue of which the sheriff levied upon the personal property of said company and sold it for $41,162.05.   On the 9th of September, 1884,

upon the petition of the sheriff, Frank Fletcher, Esq., was appointed Auditor to distribute this money. By consent of the parties interested a considerable portion of the fund was paid out to laborers for their wages and to other parties, and the amount for distribution, after deducting the sheriff's costs and the expenses of the audit, was reduced to $7,548.90. For that sum there were several claimants, viz : The Union Bank of Huntingdon and the Bedford County Bank and the appel-lants.

The following facts are taken from the report of the Auditor.

The Kemble Coal and Iron Company was a corporation engaged in the manufacture of iron, mining ore, coal, &c., in Bedford county. Its capital stock was $500,000, and its principal office was in New York city. Rezin A. Wight was the secretary and treasurer of the company, and resided in New York. William Lauder was its business manager, and resided at Riddlesburg, where its furnaces were located. It employed several hundred miners, mechanics, laborers, and clerks to carry on its business.

Some time in the year 1879 Rezin A. Wight, secretary and treasurer of the company, and William Lauder, business manager of the company, engaged in the mercantile business at Riddlesburg under the firm name of Wight & Lauder. The greater part of their business was with employés of the company, and the said firm continued to do business up till the failure of the Kemble Coal and Iron Company, when the said firm of Wight & Lauder also failed.

There was a notice posted up in the store at about the time Wight & Lauder began business, that the store had no connection with the Kemble Coal and Iron Company, and that the men could deal where they pleased. A copy of this notice was also sent or handed to each laborer of the company.

Before any employé of the company could purchase goods of Wight & Lauder on credit he was required to sign a printed paper, with the date and name of the signer filled in, authorizing and directing the Kemble Coal and Iron Company, out of any money now due or hereafter to become due said employé from said company, to pay such sums as said employé may owe to Wight & Lauder, and to charge the same to him, &c., and authorizing said Wight & Lauder to receipt on the pay-rolls of the Kemble Coal and Iron Company for any and all moneys paid by said company to his account.

Wight & Lauder did a very large business. Their sales for a few years before the failure amounted to from $80,000 to $100,000 per year. After January 1st, 1884, Wight & Lauder paid all the employés of the company their monthly wages up to June 1st, 1884, and took from the laborers a

receipt for the amount and a transfer and assignment of said wages to them, the said Wight & Lauder. These wages were paid by deducting the store bill of Wight & Lauder from each man's wages for the month, and paying him the balance of his wages in cash, and then taking a receipt, transfer, and assignment for the month.

By paper dated July 29th, 1884, Rezin A. Wight assigned all his interest in the firm of Wight & Lauder to William Lauder. When the execution issued the employés had not been paid any wages after June 1st, 1884, except what they had received in store goods from Wight & Lauder. After the levy and before the sale, Mr. Lauder procured from each of the employés of the Kemble Coal and Iron Company who owed Wight & Lauder for store goods purchased after June 1st, an assignment to him, the said William Lauder, of so much of his wages as would pay the store bill of Wight & Lauder contracted between June 1st, and the 8th day of August.

After deducting from the wages due the men from June 1st to August 8th, inclusive, the store bills of Wight & Lauder, there still remained due the employés from the company for labor performed between June 1st and August 8th, not exceeding $200 to each employé, the sum of $16,112.17. This sum constituted the unassigned labor claims, and notice was given to the sheriff, prior to the sale, of said unassigned labor claims, in accordance with the requirements of the Act of Assembly of 9th of April, 1872, giving wages for labor a preference.

Prior to August 1st, 1884, Wight & Lauder held a large number of labor claims that had been assigned to them by the laborers for wages earned after February 20th, 1884, within six months preceding the sale of the personal property of the Kemble Coal and Iron Company. The amount of assigned labor claims so held by them was more than $37,000. These claims were assigned to Wight & Lauder by the laborers at sundry times for full value, the laborers receiving either store goods or cash for the amounts so assigned.

In January, 1880, Wight & Lauder began to obtain discounts at the Bedford County Bank and at the Union Bank of Huntingdon, and continued to deal with said banks up until the failure. The cash paid the laborers to procure these assignments was obtained from said banks, Mr. Lauder representing to said banks, at the times he procured moneys from them, that Wight & Lauder held a large number of assigned labor claims, with which they could secure and protect these banks against any losses that they might otherwise suffer. On the 1st day of August, 1884, Wight & Lauder, William Lauder,

and Rezin A. Wight assigned, transferred, and set over to these two banks—to wit, the Union Bank of Huntingdon and the Bedford County Bank—$37,000 of the assigned labor claims then held by them by virtue of the assignments and transfers from the laborers to them, as aforesaid, on account of the indebtedness of William Lauder and of Wight & Lauder to the two banks aforesaid. This $37,000 of wages which had been assigned to Wight & Lauder, and by said Wight & Lauder, William Lauder, and Rezin A. Wight transferred to the banks, constituted the assigned labor claims, and notice was given to the sheriff, prior to the sale, of said assigned labor claims, in accordance with the provisions of the Act of Assembly of April 9th, 1872, giving wages for labor a preference. There was presented to your Auditor for allowance, claims for rent, *inter alia*, as follows :

1. The claim of the Huntingdon and Broad Top Railroad Company for the sum of $540.48, for royalty on coal mined on the lands of said railroad company by said Kemble Coal and Iron Company by virtue of a lease of the former to the latter. The counsel presenting said claim agrees that if the claim is allowed it may be reduced to $500. As to this claim there is no dispute that the money is owing, and but for the labor, claims it is not denied that this claim should be paid as a preferred claim.

2. The claim of the Riddlesburg Coal and Iron Company for the sum of $2,129.38, for rent of houses and royalty and trackage on coal within a year preceding the date of levy, August 8th, 1884, as per lease of said Riddlesburg Coal and Iron Company to William Lauder, dated May 17th, 1878, and recorded in book " D. No. 3, page 141," for five years from June 1st, 1878, and by agreement extending the lease five years from June 1st, 1883, recorded in book " J. No. 3." Mr. Lauder did not sub-let the premises to the Kemble Coal and Iron Company, but said company occupied the premises the same as if the lease had been made to it. The principal office of the Riddlesburg Coal and Iron Company is in New York city.

3. The claim of the Cambria Iron Company for royalty on ore from January 1st, 1884, to August 8th, 1884, for the sum of $3,091.11, under the terms of a lease from the Cambria Iron Company to the Kemble Coal and Iron Company, dated October 31st, 1879, and to continue for a period of six years. Of this $3,091.11, $1,275 is for royalty for the months of January, February, and March, 1884, and $1,705 is for royalty for the months of April, May, June, and July, 1884, and $111.11 is for royalty from August 1st, to August 8th, 1884.

For about two years prior to the failure of the Kemble Coal

and Iron Company it had been paying or settling the rent of the Cambria Iron Company by drafts at four months. The rents for the months of January, February, and March, 1884, amounting under the terms of the lease, to $1,250, were settled by a draft drawn by the Cambria Iron Company upon the Kemble Coal and Iron Company, and accepted by R. A. Wight, treasurer, dated April 17th, 1884, payable four months after date, for the sum of $1,275, $25 thereof being the interest for four months. Upon the receipt of this draft by the Cambria Iron Company a receipt was given by it to the Kemble Coal and Iron Company for the royalty for the three months aforesaid. The rents for the months of April, May, June, and July, 1884, amounting, under the terms of the lease, to $1,666.67, were settled by a similar draft, dated July 15th, 1884, payable four months after date for the sum of $1,705, $38.33 thereof being interest thereon. Upon the receipt of this draft by the Cambria Iron Company a receipt was given to the Kemble Coal and Iron Company for the royalty thus settled. Both of these receipts are in the possession of the Kemble Coal and Iron Company. The books of the Cambria Iron Company show this account for royalty paid and closed. From the time the Kemble Coal and Iron Company began to pay by drafts the books of the Cambria Iron Company show the account for royalty settled and paid when the accepted drafts were received. Neither of these two drafts has ever been paid.

For the $111.11 royalty from August 1st, 1884, to August 8th, 1884, no draft was ever given. The principal office of the Cambria Iron Company is in the city of Philadelphia. The property on the premises of the Huntingdon and Broad Top Railroad of the Riddlesburg Coal and Iron Company and of the Cambria Iron Company sold for enough to pay the respective claims of these companies for rent in full if they are entitled to be preferred to the wages of labor in the distribution. Notice was given to the sheriff of these several claims for rent prior to the sale of the personal property of the Kemble Coal and Iron Company.

The Auditor distributed the balance of the fund to the Union Bank of Huntingdon and the Bedford County Bank. To this report of distribution exceptions were filed which were dismissed by the Court, BAER, P. J., and the Auditor's report confirmed.

The appellants thereupon each took an appeal, each filing assignments of error as follows:

By the Riddlesburg Coal and Iron Company.

1. The court erred in overruling the second exception to the Auditor's report, which exception is as follows: "The

Auditor erred in finding that the sheriff was the bailiff of the landlord, the Riddlesburg Coal and Iron Company."

2. The court erred in overruling the third exception to the Auditor's report, which exception is as follows : " The Auditor erred in ruling that the claim of the Riddlesburg Coal and Iron Company must be decided irrespective of the Act of June 12th, 1878."

3. The court erred in overruling the fourth exception to the Auditor's report, which exception is as follows: "If, however, the Kemble Coal and Iron Company was not the lessee of the Riddlesburg Coal and Iron Company, as the Auditor finds, then the Auditor erred in applying the money arising from the sale of the property upon the premises leased by the Riddlesburg Coal and Iron Company to William Lauder to the assigned labor claims, to the exclusion of the rent of the said Riddlesburg Coal and Iron Company, landlord."

4. The court erred in overruling the fifth exception to the Auditor's report, which exception is as follows : " The Auditor erred in excluding the claims of the landlords and giving the fund or money in the sheriff's hands to the assignees of the labor claims."

5. The court erred in its decree confirming the Auditor's report, which decree is in the following words: "And now, 26th March, after full argument and due consideration, the exceptions are dismissed and the report of the Auditor is confirmed."

6. The court erred in ruling that the Act of June 12th, 1878, (P. L., 207,) had no application to this case, and that the notices given to the sheriff by persons holding labor claims, in compliance with the 2d section of the Act of April 9th, 1872, were sufficient to give them priority over the claims of the landlords for rent, without notice to the landlords.

By the Cambria Iron Co., the 1st, 4th, 5th, and 6th, filed by the Riddlesburg Coal and Iron Company and the following:

1. The court erred in dismissing the first exception to the Auditor's report, which exception is as follows : " The Auditor erred in finding that the drafts received by the Cambria Iron Company from the Kemble Coal and Iron Company were accepted as payment of the rent owing by the Kemble Coal and Iron Company, and that by taking said drafts the said Cambria Iron Company lost the right to distrain."

By the Huntingdon & Broad Top Railroad Co :

1. The court erred in dismissing the first exception to the Auditor's report, which is as follows : " The Auditor erred in not sustaining the position of this exceptant, to the effect that payment of wages by Wight & Lauder and W. A. Lauder was in fact, under the evidence, payment by the Kemble Coal

[Appeal of Riddlesburg Coal and Iron Co.]

and Iron Company and an extinguishment of the labor claims so paid.

2. The court erred in dismissing the second exception, which is as follows : " The Auditor erred in deciding that a notice to the sheriff of a claim for wages was a sufficient notice to the landlord and gave wages a preference over rent."

3. The court erred in dismissing the third exception, which is as follows: " The Auditor erred in rejecting the claim of the Huntingdon and Broad Top Railroad Company for rent and appropriating the fund to the Bedford County Bank and the Union Bank of Huntingdon."

4. The court erred in its decree confirming the Auditor's report in the following words: " And now, 26th March, after full argument and due consideration, the exceptions are dismissed and the report of the Auditor is confirmed."

*Longenecker·* (*Russell* with him), for Riddlesburg Coal and Iron Co., appellant.

*Longenecker* (*Russell* and *Cyrus Elder* with him), for the Cambria Iron Co., appellant.

*Samuel T. Brown,* for the Huntingdon and Broad Top Railroad Company, appellant.

*R. M. Speer* and *J. M. Reynolds,* (*John Cessna* with them), for the Union Bank of Huntingdon and the Bedford County Bank, appellees.

### RIDDLESBURG COAL AND IRON COMPANY'S APPEAL.

Mr. Justice STERRETT delivered the opinion of the Court, October 4th, 1886.

The fund in controversy, part proceeds of execution against the Kemble Coal and Iron Company, was claimed on the one hand by the Union Bank of Huntingdon and the Bedford County Bank, assignees, respectively, of certain labor claims, and, on the other hand, by the respective landlords of premises on which portions of the property sold was located. It is virtually conceded that the company appellant is entitled to its demand, $2,129.38, unless its claim is postponed to the assigned labor claims held by the two banks.

The firm of Wight & Lauder, merchants at Riddlesburg, where the Kemble Coal and Iron Company was located, paid in cash and merchandise a large sum to laborers, employed by that company, and took assignments of their respective claims. Some of these were subsequently assigned by Wight

[Appeal of Riddlesburg Coal and Iron Co.]

& Lauder to each of the banks above named. Upon the facts found by the learned Auditor and approved by the court, the two banks respectively stand in the shoes of the laborers, whose claims they thus acquired by assignment, and are clearly entitled to the sums awarded to them, unless the claim of appellant for rent is superior to theirs. It is conceded that the assignments, through which the banks claim, gave them a preference over ordinary execution creditors, but it is contended by appellant that under the 84th section of the Act of 1836, rent is a preferred claim and must be first paid out of the proceeds of such sales, &c. This was formerly the case, but it was competent for the legislature to give wages a preference over rent, and this we think was accomplished by the Act of April 9th, 1872: Purd., 1464, pl. 1, and the supplement of June 12th, 1878. The former declares that claims for wages, therein specified, "Shall be preferred and first paid out of the proceeds of the sale of such mine, manufactory, business, or other property as aforesaid;" and the latter, for the purpose of removing all doubt as to the intention of the legislature, and more fully protecting labor claims, declares "it is the true intent and meaning of the provisions of the Act of Assembly entitled 'An act for the better protection of the wages of mechanics, laborers and others,' passed the 9th day of June, 1872, that the several classes of laborers in said Act mentioned shall have a preference over landlords in all claims for rent of any mines, manufactories or other real estate, held under lease, where the lessee or lessees are the parties employing the miners, mechanics, laborers or clerks: *provided*, that any person or persons claiming a preference as above provided, shall give notice of the nature and amount of his claim to the landlord or his bailiff before the actual sale of the property levied upon:" P. L., 207.

It is conceded that notice in due form of the labor claims in question was given to the sheriff before the sale; but, it is contended by appellant that it should have been given to the landlord and not to the sheriff, and hence there was a failure to comply with the provisions of the supplement. This would doubtless be correct if the landlord had been proceeding by warrant of distress for the collection of rent; but, such was not the case. The sheriff as an officer of the Court of Common Pleas, was executing a writ directed to him by that court. Construing the acts together, we have no doubt the notice in such cases is properly given to the sheriff. In some cases, indeed, it would be impossible to notify the landlord, before the sale of the property. The conclusions reached by the learned Auditor and court below, as to the sufficiency of the notice, are correct.

4 AMERMAN—5

It follows from what has been said that neither of the specifications is sustained.

> Decree affirmed, and appeal dismissed at the costs of appellant.

## COLUMBIA IRON COMPANY'S APPEAL.

The subject of complaint in the first specification is the approval by the court of the learned Auditor's finding, that the drafts received by appellant from the Kemble Coal and Iron Company were accepted as payment of the rent arising by the latter, and that by so taking said drafts, appellant lost its right to distrain. If this finding is correct,—and presumptively it is so until the contrary clearly appears,—it is conclusive of appellant's right to participate in the fund for distribution; and, hence the subordinate questions involved in the remaining specifications become immaterial. An examination of the testimony satisfies us that the learned Auditor was fully warranted in finding as he did; indeed, it is difficult to see how, with due regard to the evidence, he could have found otherwise. There was no error, therefore, in rejecting appellant's claim for rent on the ground that it had been paid. But, if the fact had been found otherwise, still appellant would not have been entitled to participate in the distribution for the reason that the labor claims, represented by the appellees, were preferred claims and as such entitled to the whole fund, as has been determined in Riddlesburg Coal and Iron Company's Appeal, from same decree, at No. 23 of July Term, 1886.

> Decree affirmed, and appeal dismissed at the costs of appellant.

## HUNTINGDON AND BROAD TOP RAILROAD COMPANY'S APPEAL.

There was no error in refusing to hold, as complained of in the first specification, that payment of wages by Wight & Lauder, and by W. A. Lauder, to the employés of the Kemble Coal and Iron Company was in fact, under the evidence, payment by that company, and an extinguishment of the labor claims so paid. On the contrary, as has been held in other appeals from same decree, the court below rightly held that the assignment of the labor claims, first to Wight & Lauder and subsequently by them to the two banks, appellees, invested the latter, respectively, with all the rights the labor claimants themselves would have had if their respective claims had not been so sold and assigned.

[Jackson v. Payne.]

The questions intended to be raised by the remaining speci-fications have been passed upon, adversely to appellant, in the appeals above referred to, and therefore do not require further comment.

Decree affirmed and appeal dismissed at the costs of appellant.