————————o————————

## No. 6373.

## MILAM-MORGAN COMPANY, LTD., vs. ATLANTIC FRUIT CO.

### Syllabus.

A contract must be interpreted in a sense that will give it vitality rather than one that will make it lifeless.

No default is necessary when the defendant denies the contract sued on, or refuses to perform it, or when it is certain that a tender will be rejected.

Want of default must be specially pleaded.

Upon the failure of the purchaser to accept and pay for the goods sold, the vendor becomes the agent of the purchaser to administer them to the best advantage by selling them and holding the purchaser liable for the difference between the contract price of sale and the net proceeds of resale, or by keeping them and recovering the difference between the contract price of sale and the market value at the place of delivery at the time they were tendered and refused.

In case the vendors make the re-sale themselves they are not entitled to a commission on the sale. They are only entitled to be reimbursed actual expenses.

Appeal from the Civil District Court for the Parish of Orleans, Division "A," No. 106,428. Honorable T. C. W. Ellis, Judge.

H. G. Morgan, Sol. Wolff, for plaintiff and appellee.

J. J. McLoughlin, for defendant and appellant.

His Honor, CHARLES F. CLAIBORNE, rendered the opinion and decree of the Court, as follows:

Plaintiff sues the defendant for $1,847.30 damages for failure to execute a contract of sale of seventy-five car loads of rice-straw.

The plaintiff alleges that on March 28th, 1912, the defendant entered into a written contract of sale with it and it annexes to the petition the contract which reads as follows:

> "The Atlantic Fruit Co.,
>
> "Peoples Bank Bldg.
>
> "March 27, 1912.    City.
>
> "Gentlemen:
> "We beg to confirm sale to your Mr. Martin to-day for your requirements of straw, season 1912-13, beginning April 1st, current year, and terminating March 31st, 1913, about seventy-five carloads of good, sound, dry rice straw, at the price of $8.50 per ton of 2000 lbs. F. O. B. cars N. O. & N. E. R. R., New Orleans. You to give us one week's notice from time to time as to what your requirements are going to be, so that there will be no delay in getting the stuff to you from the country. * * *
>
> "Yours truly,
>
> "Milam-Morgan Co., Ltd.
>
> "Accepted by A. F. & S. S. Co. N. O. Division.
> "Albert E. Martin."

— 307 —

That plaintiff delivered to the defendant 19 carloads of straw from October 2nd, 1912, to March 25th, 1913; that thereafter defendant positively refused to receive any more, although plaintiff, on several occasions, called verbally upon the defendant to accept delivery of the remainder of the straw contracted for; that by reason of the failure of defendant to take the straw the plaintiff was deprived of a profit of $1847.39.

In a supplemental petition plaintiff itemizes the loss he has sustained and the profit of which he has been deprived.

The defendant denied any indebtedness, but admitted the written contract sued on; it averred "that it did not contract specifically for 75 carloads of straw, the quantity contracted for being indefinite in number, consequently it could not be compelled to accept 56 more carloads," and it admitted that it had refused to receive any of those cars.

There was judgment for plaintiff as prayed for and defendant has appealed.

The main question for determination is whether the contract of March 27th, 1912, quoted above, created an outright sale of about 75 cars, as contended by plaintiff, or merely a sale of so many cars, out of the 75, as defendant's requirements might need, as argued by defendant.

Our interpretation of the contract is that there was a complete agreement on one side to sell and deliver, and on the other side to buy and accept delivery of rice-straw in a quantity in the neighborhood of 75 cars, more or less. It is a familiar principle of law that such an interpretation must be given to a contract as will give it vitality rather than one that will render it null. **3 A.,**

**363.** By adopting plaintiff's position some vitality is given the contract and the parties to it have not signed in vain. By sustaining defendant's contentions, the contract falls lifeless. For the result would be that plaintiff had bound itself to sell and deliver 75 cars of straw, while the defendant was not obligated to accept any number except to the extent of its "requirements;" and if it "required" none, it was not bound to take any. This is practically defendant's contention when it argues that when it has purchased and paid for 19 cars out of a possible 75, or about one-fourth, it has complied with its engagements. This is what the Supreme Court meant when it decided in **Campbell vs. Lambert, 36 A., 35,** that:

> "An agreement by which one party engages to deliver to the other such quantities of coal as the latter may require during the year 'to the extent of 60,000 barrels with privilege of 20,000 more' at a stipulated price, but containing no obligation on the part of the latter to take or pay for any stipulated quantity, is a **nudum pactum,** from the performance of which the promiser may at any time withdraw. One promise may be a good consideration for another promise, but there must be mutuality of engagement."

In that case Lambert & Co. bound themselves to "furnish and deliver to the said W. S. Campbell of New Orleans such quantities of Pittsburg coal as may be required by Campbell to the extent above mentioned." "But," said the Court, "on plaintiff's own theory, it is manifest that the agreement is a **nudum pactum.** We scan its provisions in vain to find the imposition on Campbell, of any obligation to take or pay for any amount of coal whatever."

For that reason the Court held that the obligation entered into by Lambert was not binding, for want of mutuality, and formed no contract. The case is entirely different here where the plaintiff informed the defendant that he has made a sale to it, and the defendant accepted it and admitted it in its answer.

Besides in the **Campbell case,** the Court said, on page 37:

"If the condition upon which the defendant's promise was to take effect had been the doing of something involving labor or other value by Campbell, and upon the faith of said promise and before its revocation, Campbell had done the thing, different principles would apply, not necessary to specify here."

In the present case plaintiff alleges and shows that:

"Your petitioner avers that the commodity for which the contract in this case was made is not one that can be readily obtained whenever wanted; that contracts must be made long in advance; that in making the contract with the Atlantic F. & S. Co., your petitioner at once took steps to purchase the straw and did so and had the same shipped to the city, or prepared itself to do so, so as to be ready to make deliveries within the time specified in the contract."

We conclude, therefore, that the contract sued on was a valid sale, and the only question remaining is to fix the amount of damages for its violation by the defendant.

The defendant contends that it is not liable because the plaintiff never put it in default. It is admitted that plaintiff repeatedly called upon the defendant to accept more straw which the defendant refused to do because it was not bound to do so.

The jurisprudence is that no default is necessary when the defendant denies the contract sued on, or refuses to perform it, or when it is certain that the offer will be rejected.

> 2 H. D. Vo. Obligations, p. 1021; 2 L. D. p. 478; Breaux's D., p. 652; 1 Roehl's D., p. 1060; 99 U. S., 186; 105 U. S., 321; 106 U. S., 202.

Besides the defense of want of putting in default must be specially pleaded, 37 A., 492, and this, defendant did not do.

It has been held that upon the failure of the purchaser to accept and pay for goods, the vendor becomes the agent of the purchaser to administer them to the best advantage by selling them and holding the purchaser liable for the difference between the contract price of sale and the net proceeds of re-sale, or by keeping them and recovering the difference between the contract price of sale and the market value at the place of delivery on the day they are tendered and refused.

> C. C., 1934 (1928); C. C., 2565 (2543); 8 M., 402 (418); 4 N. S., 473; 9 R., 495 (502); 2 A., 640; 6 A., 381; 8 A., 48 (50); 14 A., 352; 45 A., 1289 (1294); 115 La., 829 (836); 13 La., 225; 14 A., 788; 17 A., 146; 20 A., 291 (292); 30 A., 264; 24 Am. & Eng. Enc. Law., 2nd. Ed., p. 1139; 1 Sedgwick on Damages, Marg., pp. 259, 280.

"The decisions based on that Article (C. C., 1934) have invariably placed a strict interpretation on its provisions. The Courts generally, awarding only such damages as will fully indemnify the creditor and disallowing speculative profits, confining them to immediate and direct consequences of the breach of contract."

> 44 A., 472.

The plaintiffs elected to make a private sale of the straw as they had a right to do.

8 M., 418; 2 A., 640; 6 A., 381; 30 A., 264 (267).

They divided the 56 carloads which defendant had refused to accept in three lots:

1st. Twenty-one cars weighing 224 and 1745/2000 tons at $8.50 a ton amounted to.................$1,911.00
they sold private at the rate of
$5.90 a ton ..............................$1,336.74
Making a loss of ..........................  $584.67

2nd. Thirteen cars weighing 172 and 1100/2000 tons at $8.50 a ton amounted to .....................$1,466.67
They sold to sundry parties at various prices
for the gross sum of                 $1,300.55
Making a loss of ..........................  $166.12

But the plaintiffs claim that they are entitled to charge $117.16 for drayage for delivering the straw to purchasers in small quantities. To this we think they are entitled, increasing their loss on this lot to $283.28.

They also claim twenty per cent commission, or $260.11, for selling these thirteen cars. We find no precedent for such a charge. Plaintiffs are entitled to be reimbursed expenses actually paid by them for a re-sale of the straw, and perhaps for the value of their services in effecting said sale; but of this there is no proof.

Nor are they entitled to recover $60.35 for storage nor $20.00 for unloading. The defendants were not under obligation to receive any number of cars at any particular time from March 27th, 1912, to March 31st, 1913, nor had they ordered any which they refused to receive. Plaintiffs unloaded and stored them during that period for their own convenience. Had defendants complied

with their contract, they could not have been made to pay any such charges.

3rd. The third lot of twenty-two cars weighing 254 and 120/100 tons the plaintiff sold at $7.50 a ton or a loss of $254.12.

We therefore conclude that the plaintiffs are entitled to the sums above set forth, as follows:

Upon lot of 21 cars ........................ $584.67
Upon lot of 13 cars ........................ $283.28
Upon lot of 22 cars ........................ $254.12

Making a total of ........................$1,122.07

It is therefore ordered that the judgment of the District Court be amended by reducing the amount in favor of plaintiff from one thousand eight hundred and forty-seven 39/100 dollars to one thousand one hundred and twenty-two 07/100, and as thus amended that it be affirmed, the costs of appeal to be paid by plaintiff and the costs of the District Court by the defendant.

Opinion and decree, May 17th, 1915.

Rehearing refused, both applications, June 30th, 1915.