**PHILADELPHIA & READING COAL & IRON CO. et al. v. VAN DEUSEN et al.**

**Nos. 6769, 6778.**

Circuit Court of Appeals, Third Circuit.

April 19, 1939.

Penrose Hertzler, of Pottsville, Pa., and J. A. Welsh, of Shamokin, Pa., for appellants.

Fred B. Moser, of Shamokin, Pa., for wage claimants.

Walter L. Hill, of Scranton, Pa., for appellees.

Before BIGGS, MARIS, and CLARK, Circuit Judges.

MARIS, Circuit Judge.

This is an appeal by the Philadelphia and Reading Coal and Iron Company and

the Fulton Coal Company from a decree of the District Court for the Middle District of Pennsylvania. On September 15, 1932 the appellants and the Northumberland Mining Company, hereinafter called the debtor, entered into an agreement whereby the debtor was given the exclusive privilege of mining coal from certain veins of coal within described parcels of land owned by the appellants in consideration of the payment of royalties and taxes. On June 2, 1933 and again on November 3, 1934 the appellants levied and distrained for arrears in royalties. Two days after the second levy, on November 5, 1934, the debtor filed in the court below a petition to reorganize under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. The petition was approved and the appellants were restrained from proceeding with their levies. The debtor was continued in possession of its property and continued to mine coal until May 15, 1935. On October 25, 1935 it confessed insolvency and liquidation was ordered. The debtor's personal property was sold in liquidation for $68,000. The trustees then filed their account showing that the claims to the proceeds of the sale exceeded the fund available for distribution. The trustees' account was referred by the court below to a special master who was directed to consider the claims against the fund and report upon the proper distribution thereof. Following is a summary of the special master's recommendations for the distribution of the fund:

| | |
|---|---:|
| Miscellaneous administration costs | $20,241.07 |
| Royalties on coal mined during operation under 77B | 7,321.46 |
| Wage claims | 30,448.11 |
| Workmen's Compensation deficit | 7,230.43 |
| Funds for future administration costs | 3,654.89 |
| Total | $68,895.96 |

These recommendations, except for some details not involved in this appeal, were approved by the District Court and incorporated in the decree appealed from.

The appellants contend that they are entitled to share equally with administration costs. They claim $63,446.07 for unpaid royalties due before the debtor's petition for reorganization was filed; $26,367.50 royalties due for the period the debtor operated under court order; $40,-638.08 taxes paid by them during the same period; and $25,967.18 for expenses incident to keeping the mines clear of water after the debtor gave up operations and before the property was sold. We shall treat these claims in the order presented.

I. Royalties due prior to reorganization:

On November 3, 1934 the appellants distrained for $63,446.07 royalties. They rely upon this distraint as giving rise to a lien in their favor and upon the Pennsylvania Act of June 22, 1931, P.L. 889, § 1, 68 P.S. § 322, as entitling them to priority in payment out of the proceeds of the sale by the trustees in bankruptcy. This Act provides: "Whenever any sheriff shall, pursuant to an execution issued, levy upon any goods and chattels upon which there is at the time a distress for rent, or whenever a receiver, a receiver in bankruptcy, or a trustee in bankruptcy shall be appointed for any person, firm, or corporation upon whose goods and chattels there is at the time a distress warrant for rent, any sale, pursuant to such levy or distress for rent, shall be stayed pending the sale of such goods and chattels by the sheriff, receiver, receiver in bankruptcy, or trustee in bankruptcy; and the sheriff, receiver, receiver in bankruptcy, or trustee in bankruptcy may proceed and sell such goods and chattels, as provided by existing law for sales by such officer, and, in such cases, the claim for rent, together with costs of executing such landlord's warrant, may be filed with the sheriff, the receiver, the receiver in bankruptcy, or the trustee in bankruptcy, as the case may be, and shall be a lien on the proceeds of the sale of such personal property, and be paid first out of the proceeds of such sale."

■ The right of the landlord to be first paid out of the proceeds of the sale is thus dependent upon the existence of a valid distraint. The right of an owner of real estate to distrain for rent is restricted to goods found on the demised premises. This was so at common law, 3 Bl.Comm. 11, and it is the law of Pennsylvania. Clifford v. Beems, 3 Watts, Pa., 246; Grant and McLane's Appeal, 44 Pa. 477; Boyle v. Coleraine Colliery Co., appellant, 323 Pa. 224, 185 A. 838. We must therefore refer to the 1932 agreement in order to determine whether the distraint in the instant case was made

on premises in fact demised to the debtor. An examination of this agreement discloses that the appellants granted, demised and let to the debtor the exclusive right and privilege of digging, mining and carrying away anthracite coal that could be mined from certain veins of coal within certain parcels of land owned by the appellants, which parcels of land were fully described. They also granted and demised so much of the surface as was occupied by a then existing colliery and improvements and so much of the surface as might in the future be designated by the appellants' engineers for the accommodation of any colliery or other improvements which the debtor might desire to erect upon the land. It will thus be seen that what the appellants did principally was to grant the debtor a license to mine coal rather than a demise of the premises. Barnsdall, Appellant v. Bradford Gas Co., 225 Pa. 338, 74 A. 207, 26 L.R.A.,N.S., 614. Although they did demise the surface of the building sites there is nothing in the record which would justify a fact finding that the distraint was made on these sites. We conclude that the distraint, made on premises which were not demised, did not give rise to a lien. We have been aided in reaching this conclusion by the decision and reasoning of the Pennsylvania Supreme Court in Boyle v. Coleraine Colliery Co., supra, a case similar on its facts to the instant case. It was there held that a distress did not give rise to a lien because not made within the limits of the leased property.

In the absence of a valid lien the order of payment of priority claims is governed by Section 64b of the Bankruptcy Act, 11 U.S.C. § 104(b), 11 U.S.C.A. § 104(b), which provides that wage claims have priority over debts owing to any person who by the laws of the States or the United States is entitled to priority. Furthermore, in the absence of a lien the Pennsylvania Act of June 12, 1878, P.L. 207, § 1, 43 P.S. § 230, granting wage claims of miners employed by a lessee priority over the lessor's rent claim, is applicable. Appeal of Riddlesburg Coal & Iron Co., 114 Pa. 58, 6 A. 381; Sloan & Zook Co. et al. v. Lyons Refining Co., 290 Pa. 442, 139 A. 133, 55 A.L.R. 275.

Our conclusion is that the District Court did not err in refusing priority to the appellants on this claim over the wage claims.

II. Royalties which accrued during the period the debtor operated under court order:

Royalties amounting to $26,367.50 accrued on coal mined during April and May 1935. The special master treated these royalties as an administration cost and recommended that the appellants be paid $7,321.46 as fair and just compensation therefor. In adopting this recommendation we think the court below erred. The trustees under order of the court undertook to continue the debtor's business. This could be done only if they continued to purchase coal in place from the appellants. No new price for the coal mined was agreed upon by the parties involved. A price was fixed in the 1932 agreement and when the coal was mined and used by the debtor the appellants were entitled to be paid at the rate of compensation fixed in the agreement. The record is devoid of any evidence upon which a finding of a fair and just value for the coal mined could be based except for the measure of payment per ton embodied in the 1932 agreement; nor is there any evidence to justify a conclusion that the rate charged in accordance with the agreement was excessive. In use and occupation claims, where the situation is somewhat similar to that in the instant case, the rental fixed by the lease is presumably reasonable and is the rate allowed if there is no evidence that it is excessive. In re Millard's, Inc., 7 Cir., 41 F.2d 498; Green v. Finnigan Realty Co., 5 Cir., 70 F.2d 465; In re Mlle. Lemaud, Inc., 1 Cir., 16 F.2d 780.

We conclude that the District Court erred in accepting the special master's recommendation reducing the royalties allowed as administration expenses.

III. Taxes:

In the 1932 agreement the debtor not only agreed to pay the appellants royalties but also all taxes which might be assessed against the properties involved, in consideration of the license to mine coal. Subsequent to the filing of the petition for reorganization and for the period the debtor operated under court order, taxes amounting to $40,638.06 accrued and were paid by the appellants. The appellants' claim of priority for this amount was denied, we think properly.

The taxes levied from time to time upon the real estate were not shown to bear any relation to the value either of the

coal actually removed or of the building sites actually demised. In the absence of such evidence the court properly declined to allow the claim for the sums paid in taxes as in the nature of payments for use and occupation. Since the taxes as such had been paid the taxing authorities had no further interest in the matter. Nor was it ever a tax obligation of the debtor. Hardeman et al. v. Hendrix, 5 Cir., 29 F.2d 738. The appellants have a general unsecured claim under the agreement against the debtor for repayment of the taxes, which is postponed to all claims having priority. The District Court did not err in disallowing this claim.

IV. Maintenance of Mines:

The debtor ceased operating May 15, 1935 although it did not confess insolvency until October 25, 1935. On May 21, 1935 the appellants obtained an order of the Court directing the debtor to permit their entry into the mines for the purpose of protecting the property. The cost to the appellants of operating the pumps so as to keep the mines clear of water was $25,967.18. They claim that this sum was expended to maintain and preserve the debtor's estate and that they are therefore entitled to repayment as an administration cost.

The special master found that the pumping was essential for the protection of the appellants' interests in the mines and personal property therein contained, to which they had claims. Any benefit to the debtor was incidental, for it had ceased to operate. It was within the province of the court to determine whether the expenditures were made on behalf of the appellants or of the debtor. We think it properly found that the work was done for the appellants' own benefit. The District Court did not err in refusing priority to this claim.

A motion was made on behalf of the wage claimants to dismiss the appeal. We have considered it but find it to be without merit. It is accordingly denied.

The decree of the court below is modified by increasing from $7,321.46 to $26,367.50 the amount of royalties allowed to the appellants as administration costs and by reducing the amount awarded to the wage claimants accordingly. In all other respects the decree is affirmed.